State v. Williams.

*R. F. Walker*, attorney general, and *C. O. Bishop* for the state.

---

THE STATE v. WILLIAMS, *Appellant.*

Division Two, December 15, 1896.

1. **Criminal Law**: EMBRACERY: CONSUMMATION OF OFFENSE. Under Revised Statutes, 1889, section 3675, declaring it a crime for anyone to corrupt or attempt to corrupt any other person summoned or sworn as a juror, the offense is complete when the attempt is made, and it is immaterial whether it is successful or not, or whether the juror attempted to be corrupted gives a verdict, or whether the verdict given be true or false.

2. ———: ———: ———. It is immaterial that the juror attempted to be corrupted had determined in advance to do that which the person seeking to corrupt him desired him to do.

3. ———: ———: ———. Any one who corrupts or attempts to corrupt a person summoned on the jury is guilty under the statute; the person sought to be corrupted need not have been selected and sworn on the trial jury; it is sufficient if he was one of the panel summoned from which the traverse jury was to be selected.

4. ———: ———: INDICTMENT. An indictment under the statute (R. S. 1889, sec. 3675) for corrupting or attempting to corrupt a juror is sufficient if it follows the language of the statute. It need not allege that the panel, upon which the juror approached, was summoned, was summoned by order of the county court, the statutes regarding the issuance of a venire being directory.

5. ———: PRACTICE: INSTRUCTION. An instruction which singles out one alleged fact and directs a verdict on that alone is improper and should be refused.

6. ———: ———: ———. It is not error to refuse an instruction embraced in others previously given.

7. ———: EMBRACERY: INTENT: EVIDENCE. On a trial for attempting to corrupt a juror, evidence of other jurors that the defendant attempted to corrupt them, is admissible to explain the intent with which he approached the juror he is charged with attempting to corrupt.

8. ———: PRACTICE: SELF-INVITED ERROR. A party will not be heard to complain of an error he has himself invited.

9. ———: ———: INSTRUCTIONS: EXCEPTIONS. The objection that the court failed to properly instruct the jury will not be noticed on appeal, where no exception was saved at the time the instructions were given.

*Appeal from Carroll Circuit Court.*—HON. W. W. RUCKER, Judge.

AFFIRMED.

THE defendant was fined $500, having been found guilty of attempting to bribe one Dickenson who had been summoned and selected as one of a panel of forty, who were summoned in the case of the state of Missouri against Wm. P. and George E. Taylor, indicted for the murder of Gus Meeks.

The indictment is founded on section 3675, Revised Statutes, 1889, and charges "that on the 25th day of March, 1895, at the county of Carroll and state of Missouri, a certain panel of forty jurors of said county being then and there duly summoned, returned, impaneled, and sworn as to their qualifications to serve as jurors, and the said panel of forty jurors, being then and there qualified to sit on said jury, and being then and there accepted by the court as competent and qualified to serve as jurors on said jury, from which said panel of forty jurors, so returned, summoned, and

qualified, and sworn as aforesaid, a jury of twelve
jurors was then and there being selected to try a cer-
tain criminal cause in which the state of Missouri was
plaintiff and Wm. P. Taylor and George E. Taylor
were defendants, upon the charge of having feloniously
killed and murdered one Gus Meeks, which said crimi-
nal cause was then and there depending and on trial in
the circuit court in and for said Carroll county, the said
circuit court then and there having jurisdiction of said
criminal cause; and one J. S. Williams then and there
well knowing the premises and facts aforesaid, and that
one Charles Dickenson was one of the said panel of
forty jurors as aforesaid, corruptly and wickedly and
feloniously intending to hinder and prevent a just and
fair trial of said cause and issue by said jury, did then
and there unlawfully, knowingly, corruptly, wickedly
and feloniously attempt to corrupt the said Charles
Dickenson, one of the panel of forty jurors, from
which said panel a jury was then and there being
selected to try said cause as aforesaid, by offering to
give to the said Charles Dickenson a gift and gratuity,
to wit, by then and there offering and promising to
well pay the said Charles Dickenson if the said Charles
Dickenson would return a verdict in favor of the said
defendants or hang the jury then and there being
selected to try said cause as aforesaid, and by saying
to the said Charles Dickenson that he, the said Charles
Dickenson, could well afford to leave his farm and sit
on said jury and hang it, and that he, the said J. S.
Williams would see that the said Charles Dickenson
would get well paid for bringing in a verdict for the
said defendants or for hanging the said jury as aforesaid,
he the said J. S. Williams, then and there and there-
by offering to give and intending to give to the said
Charles Dickenson money and other valuable things,
the amount, kind, value, and character of which is to

these jurors unknown, with the felonious intent then and there and thereby to bias the mind of the said Charles Dickenson and induce him, the said Charles Dickenson, to be more favorable to the side of the defendants, William P. Taylor and George E. Taylor, than to the side of the plaintiff, the state of Missouri, in the trial and decision of the said issue so joined and to be tried by and before said jury then and there being selected as aforesaid and to wickedly, corruptly, and feloniously bribe said Charles Dickenson so summoned as juror, against the peace and dignity of the state.''

The section of the statute referred to is the following:

''Every person who shall corrupt, or attempt to corrupt, any other person summoned or sworn as a juror, appointed a referee or chosen an arbitrator, by giving or offering to give any gift or gratuity whatsoever, with the intent to bias the mind of such juror, referee or arbitrator, or incline him to be more favorable to one side than the other, in relation to any cause, matter, or proceeding which may be pending in the court to which said juror shall have been summoned, or in which such referee or abitrator shall have been chosen or appointed, shall on conviction be punished as in the next preceding section is prescribed.'' Sec. 3675, R. S. 1889.

The testimony in this case establishes the fact that at the March term, 1895, of the Carroll circuit court the case of the State v. Wm. P. and George E. Taylor, who were under indictment for having killed Gus Meeks in Linn county, Missouri, and which case had been brought to Carroll county on defendant's application for a change of venue, was pending and for trial; that both parties had announced ready, and a *venire* had been issued to the sheriff commanding him to summons one hundred and

fifty persons as jurors from which to select a jury to try that cause. It appears from the testimony that among the one hundred and fifty persons summoned and among the panel of forty who were accepted on the *voir dire* examination were Charles Dickenson and E. A. O'Dell; that after the panel of forty had been selected they were excused by the court and instructed to report three days later; that during this time the defendant in this case who was the father of a young attorney at Tina, Missouri, got into a buggy and started out to the home of both O'Dell and Dickenson with a view to inducing them to remain upon the panel of twelve and to hang the jury or bring in a verdict of not guilty. The testimony shows that he visited O'Dell in the morning before breakfast and that O'Dell refused to permit Williams, the defendant, to discuss the Taylor case with him; that he next paid a visit to Charles Dickenson between 9 and 10 o'clock at night; that Dickenson was partially prepared to retire; that the defendant called to him and asked him to come out; that he dressed himself, went out and got into the buggy with him at Williams' invitation, and they drove away from the house some two or three hundred yards; that Williams began talking to him by asking him if he could deal with him on the square; that he also asked Dickenson whether or not he was an Odd Fellow; that in that conversation he said to Dickenson that if he would keep quiet and was retained on the panel of twelve and would hang the jury or bring in a verdict of not guilty that he would see him well paid; that he could well afford to leave the farm and sit upon that jury and hang it.

The testimony further shows that the defendant made an effort to buy or bribe James F. Sparks and E. A. O'Dell. It is shown that Dickenson had stated to defendant's counsel that he would hang the Taylors

unless they scratched him off the jury, and that he asked counsel for defendant to scratch him off the jury.

The defendant, testifying in his own behalf, admits going to the home of Dickenson and talking to him about the Taylor trial, and that, too, after he knew that he had been retained on the panel of forty, and excused under the prohibitory instructions of the court, and after he had heard him make that statement to Taylor's counsel. The defendant maintains that he went there for the purpose of ascertaining whether or not the juror Dickenson was opposed to capital punishment. Defendant also denied a large portion of what Dickenson had testified to.

At the instance of the state the following instructions were given:

"1.   It is the duty of the court to instruct you upon all questions of law arising in this cause, and it is your duty to receive such instructions as the law of the case and to find the defendant guilty or not guilty according to the law as declared by the court and the evidence as you have received it under the direction of the court.

"2.   The indictment in this case is a mere formal charge and furnishes no evidence whatever tending to establish the defendant's guilt.

"3.   The defendant is presumed to be innocent of the crime charged and this presumption attends him to the close of the trial and at the end entitles him to an acquittal unless it is overcome by evidence proving his guilt beyond a reasonable doubt.

"4.   If you have a reasonable doubt of defendant's guilt you must acquit him, but such doubt to warrant an acquittal must be a substantial doubt of his guilt and not a mere possibility of his innocence.

"5. You are the sole judges of the credibility of the witnesses and the weight to be given to their testimony. In determining what credit or weight you will give to the testimony of any witness, you may take into consideration his interest, if any, in the result of the prosecution. The defendant is a competent witness in his own behalf, but the fact that he is the defendant and the interest he has at stake in the cause may be considered in determining what weight you will give to his testimony. If you believe that any witness has willfully sworn falsely to any material fact in this case you may disregard the whole or any part of the testimony of such witness.

"6. If you find and believe from the evidence in this case beyond a reasonable doubt that on or about the twenty-fifth day of March, 1895, the case of State of Missouri against William P. Taylor and George E. Taylor wherein they were charged with having feloniously killed and murdered one Gus Meeks was pending in the circuit court of Carroll county, Missouri, and that a panel of forty jurors had been summoned, selected, and qualified, from which panel of forty a jury of twelve jurors was to be selected, and that Charles Dickenson was one of said panel of forty jurors in said cause summoned, selected, and qualified and that the defendant on or about March 25, 1895, at Carroll county, Missouri, did unlawfully and knowingly attempt to corrupt the said Charles Dickenson, one of the panel of forty jurors in said cause summoned, selected, and qualified, by offering and promising to well pay the said Charles Dickenson if he would hang the jury of twelve jurors to be chosen as aforesaid in said cause of State against said William P. Taylor and George E. Taylor, with the intent then and thereby to bias the mind of the said Charles Dickenson and incline him to be more favorable to the defendants, William

P. Taylor and George E. Taylor, than to the plaintiff, the State of Missouri, then you will find the defendant guilty as charged and assess his punishment at imprisonment in the penitentiary for a term of not less than two years nor more than five years, or by a fine of not less than one hundred dollars and imprisonment in the county jail not less than three months.

"7.    The fact that witness Dickenson may have determined in his own mind to hang the jury in the case of the State of Missouri against William P. Taylor and George E. Taylor will not excuse the defendant if the jury find that the defendant promised to well pay the said Charles Dickenson if he would hang the jury of twelve jurors to be chosen in the case of the State of Missouri against George E. Taylor and William P. Taylor as defined in instruction number 6."

On request of defendant the court gave these instructions:

"1.    The law presumes the defendant is innocent of the crime charged, and before that presumption can be overcome and the defendant be convicted, the state must satisfy the jury by the evidence in the case beyond a reasonable doubt that he is guilty in manner and form as charged in the indictment.

"2. The indictment charges that the defendant attempted to corrupt one Charles Dickenson, a juror in the case of the State v. Geo. and William Taylor by offering to give said juror some gift or gratuity, or to well pay him, with intent to bias his mind, or to induce him to be more favorable to the side of the defendants in said cause than to the other, and unless the jury shall believe from the evidence beyond a reasonable doubt that the defendant did offer said juror some gift or gratuity, or to well pay him, with intent to bias his mind in said cause or to incline him to be

more favorable to the said defendants in said cause you should return a verdict of not guilty.

"3. Unless the jury are satisfied from the evidence beyond a reasonable doubt that the defendant offered the juror, Dickenson, some gift or gratuity, or to well pay him, with intent to bias his mind or incline him to be more favorable to the defendants in State *v.* Geo. and William Taylor than to the state, you can not convict the defendant in this case.

"4. The jury must determine from all the evidence in the case whether the defendant did offer the juror, Dickenson, any gift or gratuity, or to well pay him, with intent to bias the mind of said juror or to induce said juror to be more favorable to the defendants in the case of State *v.* George and William Taylor than to the state, and if they shall have a reasonable doubt as to whether he did so offer any such gift or gratuity, or pay for such purpose, or with such intent, they must find the defendant not guilty.

"5. Although the jury may believe from the evidence that the defendant had a conversation with the juror Dickenson, in which conversation the juror stated that he was opposed to capital punishment, and that defendant then and there told him to say nothing about it, yet that fact is not sufficient to authorize a conviction in this case.

"6. The jury are the sole judges of the credibility of the witnesses in this case and the weight to be given to their testimony, and if the jury believe that any witness has willfully sworn falsely as to any material fact in this case, they may disregard all or any part of such witness' testimony."

But the court refused to give certain other instructions which the defendant asked, to wit:

"7. If the jury shall believe from the evidence that the juror Dickenson had been examined as one of

the panel of forty jurymen in the State *v.* Geo. and William Taylor, and on such examination had been accepted as a competent and qualified juror, and that after he was so accepted he told defendants and others that he was opposed to capital punishment, and if required to act as a juryman in said case he would hang the jury, and if the jury believe from the evidence, defendant asked him to say nothing about it, and that if he told no one about it he would be well paid, then such an offer made by defendant would not constitute the crime of offering to bribe said juror, as charged in the indictment in this case.

"8. Although the jury may believe that defendant went to see the juror Dickenson for the purpose of ascertaining whether he was so opposed to capital punishment, as to be unwilling to find a party guilty of murder, yet such conversation with said juror, while improper, would not constitute the crime of bribery nor authorize a conviction in this case.

"9. The evidence of the witness O'Dell is excluded from the jury, and in making up their verdict they will disregard all his evidence.

"10. The evidence of witness Sparks is excluded from the jury, and they will disregard his testimony in making up their verdict.

"11. In order to authorize a conviction in this cause, the jury must find from the evidence, beyond a reasonable doubt, that the defendant gave or offered to give to the juror Dickenson, some gift or gratuity with the intent to bias the mind of such juror, or incline him to be more favorable to one side than the other, in relation to said Taylor case, and unless they do so find, they must acquit the defendant."

*L. H. Waters* for appellant.

(1)   The motion to quash should have been sustained.   It is not alleged that Dickenson was summoned or sworn in the Taylor case as a juror.   Nor is it alleged that a panel of forty jurors was ordered by the court.   An order of court was necessary.   R. S. 1889, sec. 6073.   Dickenson was not a juror summoned in the case unless there was an order directing that a panel be summoned.   (2)   The evidence does not sustain the allegations of the indictment.   An attempt to corrupt the juror is charged by offering him a gift if he would acquit the Taylors or hang the jury.   The evidence of the state was that the juror was opposed to capital punishment and told defendant he would hang the jury for nothing if he was left on it, and then defendant said he would be well paid if he would keep still about it.   The juror had already sworn on his examination that he was not opposed to capital punishment when examined as to his qualifications, and he told he says all of his neighbors that he would not hang a man.   (3)   The court erred in admitting the evidence of O'Dell and Sparks.   It certainly was incompetent and tended to prejudice defendant's case. *State v. Simms*, 68 Mo. 305; *Dayharsh v. Railroad*, 103 Mo. 577.   The error was not harmless.   (4)   The court erred in giving instructions numbered 6 and 7 on behalf of the state.   The sixth was drawn on the theory that defendant promised the juror that he would pay him if he would hang the jury.   It should have followed the evidence.   It ignores the order for the panel if there was one.   The seventh was not authorized by the evidence.   The juror had not only determined in his own mind but had told all of his neighbors that he would not hang anybody.   Defendant's seventh instruction should have been given.   His eighth

instruction was supported by his own testimony and if the jury believed his testimony he was entitled to an acquittal. Instructions 9 and 10 excluding the evidence of O'Dell and Sparks should have been given. The eleventh instruction follows the statute and should have been given. R. S. 1889, sec. 3675.

*R. F. Walker*, attorney general, and *Morton Jordan*, assistant attorney general, for the state.

(1) The first allegation in the motion for new trial that the verdict is not supported by the evidence is without merit. The testimony upon the part of the state clearly showed beyond question that the defendant attempted to bribe juror Dickenson and to secure from him either a hung jury or a verdict of acquittal in the *Taylor* case. There is no such failure of proof in this case as would warrant a reversal because of the insufficiency of the testimony. *State v. Fischer*, 124 Mo. 462; *State v. Punshon*, 124 Mo. 448. In the introduction of the record evidence, the state followed the *White* case, 16 S. Rep. (Alabama) 64. Nor can it be said that the verdict is against the law; on the other hand, the verdict is in accord with the testimony and the law, as declared by the court. (2) Complaint is made of each of the instructions given upon the part of the state; the first five of which are the stereotyped forms as to the indictment, presumption of innocence, reasonable doubt, credibility of witnesses, and the defendant's competency as a witness in his own behalf. Instruction number 6, following closely and carefully the language of the statute defining the offense and the indictment, advised the jury as to what facts were necessary to constitute the offense of which the defendant had been charged, and as to the punish-- ment to be assessed in the event of defendant's convic-

tion. Sec. 3675, R. S. 1889. Instruction number 7 very properly and correctly told the jury, that even though Dickenson had made up his mind to hang the jury, yet that could not excuse the defendant if the jury found that he had proposed to well pay Dickenson if he would hang the jury. (3) Instruction number 7, asked by defendant, was properly refused. The crime was complete when defendant approached the juror with intent to corrupt him, and it makes no difference that the juror had previously determined to do that which defendant desired him to do. Instructions 9 and 10 were properly refused. The evidence of O'Dell and Sparks was admissible for the purpose of proving the intent and explaining the conversation had with the juror Dickenson. Instruction 11 was unnecessary because embraced in others already given. If there was error in failing to give instruction 5 asked by the state, it was invited by defendant who objected to it, and he will not now be heard to complain. No exception was saved to the failure of the court, to fully declare the law at the time the instructions were given and the point will not be reviewed in this court. (4) The indictment carefully followed the language of the statute creating the offense and is sufficient. R. S. 1889, sec. 3675; *State v. McCrystol*, 43 La. Ann. 907; *State v. Glandi*, 43 La. Ann. 914.

SHERWOOD, J.—The crime of which defendant was convicted was known at common law, and is an ancient offense. It was entitled *"embracery."* It consists in all such practices as tend corruptly to influence a juror. The crime is made up of the *attempt* thus to influence a juror. Upon such attempt being made, whether successful or not, the crime is consummate. The *corpus delicti*, the body, essence, and substance of the offense,

being the corrupt attempt, it is wholly inmaterial whether the would-be corrupt or gains his point or not, or whether the juror thus approached gives any verdict or not, or whether the verdict be true or false. 2 Bishop, New Crim. Law, sec. 384; 2 Bishop, New Crim. Proc., secs. 344, *et seq.*; 2 Archb. Crim. Prac. and Plead. (Waterman's notes) 906.

These considerations are mentioned to show that the evidence already recited as having been given on behalf of the state, if believed by the jury (and that it was believed is evidenced by their verdict), was sufficient for defendant's conviction. And it belonged to the jury, and was their exclusive province, to determine which of the witnesses they would believe or disbelieve.

Nor does it matter that Dickenson had already determined to hang the jury before being approached by defendant.

Nor, further, does it matter that Dickenson was only one of the panel of forty who had been *summoned*, and had not become one of the smaller panel of twelve finally selected and sworn as the traverse jury; and this is so because of the language in which section 3675 is concluded: "Every person who shall corrupt, or attempt to corrupt, any other person *summoned* or sworn," etc. The word "*juror*" is here used as a generic term, and is sufficiently broad and comprehensive, used in the connection it is, to embrace one who has only been *summoned* on the larger panel, as well as one who has been selected and sworn on the smaller one, the members of which have been actually charged with the issue joined between the state and the then defendants.

Indeed, it might be said that the legislature has exhibited much wisdom herein by providing for the punishment of those who tamper with unsworn jurors,

jurors only summoned on the general panel, because it will be easily comprehended that corrupt approaches are far more readily made to such jurors, than after the traverse jury has been selected, sworn, and placed in the charge of an officer.    This view finds ample support in the case of *State v. McCrystol*, 43 La. Ann. 907, wherein it was held that although the statute only mentioned "grand or petit juror," yet that such words were sufficiently comprehensive to embrace "tales jurors."

That case is also authority to uphold the goodness of the present indictment.    See, also, 2 Whart. Preced. Indict. & Pleas. 1022.    And aside from any authority we should hold the indictment good, since it plainly and with sufficient fullness follows the language of the statute upon which it is drawn.

It was not necessary for the indictment to allege that the panel of jurors on which Dickenson was summoned, was summoned by order of the court, as the precedents heretofore cited show.    The issuance of a *venire* has not been regarded as necessary in this state since *Samuels v. State*, 3 Mo. 68.    And, ever since statutes regarding the summoning of a jury have been enacted, they have only been regarded as *directory*.  *State v. Pitts*, 58 Mo. 556; *State v. Jones*, 61 Mo. 232; *State v. Knight*, 61 Mo. 373; *State v. Hart*, 66 Mo. *loc. cit.* 213; *State v. Breen*, 59 Mo. *loc. cit.* 417; *State v. Ward*, 74 Mo. *loc. cit.* 256; *State v. Griffin*, 87 Mo. *loc. cit.* 612; *State v. Matthews*, 88 Mo. *loc. cit.* 124;    *State v. Gleason*, 88 Mo. *loc. cit.* 585.    And even if the panel in *State v. Taylor* was irregularly summoned, the only way objection could be taken thereto would be by timely objection in *that* case.    *Samuels v. State* and *State v. Jones, supra.*    The point certainly could not be successfully raised *collaterally* in another case to defeat the prosecution or invalidate the indictment therein.

Now as to the instructions:    Complaint is made

by defendant against all of those given on behalf of the state. Those instructions from 1 to 5 inclusive are in stereotyped form, such as have very frequently been approved by this court.. As to instruction 6 of the series, it simply accurately and properly defined the crime with which defendant is charged. Similar remarks apply to instruction 7 given on the part of the state; it was supported by the evidence, and in effect the propriety of giving it has already been incidentally passed upon when heretofore discussing the sufficiency of the evidence. Taking the instructions just considered and those granted at defendant's request, they certainly left. nothing to be desired as to those instructions, except as hereinafter specified.

Respecting instruction 7 refused defendant, it was properly refused as already pointed out by previous remarks. Instruction 8 was improper because it singled. out one alleged fact and directed a verdict on that alone, and in that was misleading, and therefore properly refused, and, in addition thereto, it stated a mere legal truism, which every juror would understand without an instruction, that a mere conversation with a juror about his opposition to capital punishment would not amount to the crime of bribery. Moreover, instruction 8 is virtually the same as instruction 5 given at defendant's request. Instructions 9 and. 10 were not given and properly so, because the testi-- mony of Sparks and O'Dell was admissible to explain the intent which actuated defendant in his approaches to Dickenson. Instruction 11 having been embodied in previously given instructions, error did not occur in. refusing its vain repetition.

At the close of the giving of instructions, defendant made the point that the court had failed to instruct. the jury upon all points necessary, etc., and excepted on that account. Whereupon the court at the request.

State ex rel. v. King.

of the state, gave instruction marked "5" limiting the testimony of Sparks and O'Dell to showing the intent of defendant.    But this instruction which corrected any possible defect in former ones was objected to by defendant, and because of such objection was refused by the court.    In this ruling defendant has no ground of complaint, and for the reason that a party can not complain of *self-invited error*.    R. S. 1889, sec. 4115. Besides, the point was not made in defendant's motion for a new trial that the court had failed to instruct, etc.

Finding no error in the record, we affirm the judgment.    All concur.