## STATE OF MISSOURI, Respondent, v. CHARLES O. DAVIDSON. Appellant.

Kansas City Court of Appeals, June 2, 1913.

1. CRIMINAL LAW: Attempt to Induce Witness not to Testify. Defendant had written whiskey prescriptions for one H. who had obtained liquor on them at P. & T.'s drug store. The druggists had been indicted on fifty charges of illegal liquor sales. They informed defendant that he was likely to be prosecuted also, and requested him to see H. who was the prosecuting witness on each of the fifty indictments. Defendant did go to see him, and told H. the druggists would give him $50 a month and expenses if he would go away and stay till a new prosecutor was elected. He did not say what he would do, but an arrangement was made to meet again at defendant's office the next morning. They did so and defendant told H. it was nothing to him but P. & T. could afford to give him $1000 to go away. *Held*, that the attempt to induce the witness to go away was complete although defendant did not himself tender or offer to give any money for this purpose, and without regard to whether the witness was amenable to the influence or not.

2. ———: ———: Overt Act in Addition to Intent. In addition to the intent, there must be an overt act made in the attempt to carry out the intent, but in this case there was evidence of such overt acts.

3. ——: ——: **Conversations Question for Jury.** As to which version of what conversation took place between defendant and the witness H. is true, the jury are the sole judges and their verdict will not be disturbed where there is evidence to support it.

4. ——: ——: ——: **Construction of Statutes and Language.** While criminal statutes are to be strictly construed, courts are not authorized to so interpret them as to defeat the obvious purpose of the Legislature. And in getting at the real meaning of language used by one attempting to induce another to commit a crime, the jury have a right to construe it in the light of the facts and the object to be accomplished. Men engaged in such dangerous practices do not speak frankly to those of whom they are not sure, and craftily veil their meaning behind other words. And if courts cannot see beneath the surface meaning of such words, they are not efficient agents to enforce the criminal laws.

5. ——: **Evidence.** Evidence as to other conversations showing defendant's interest in H.'s testimony and therefore a motive in having him go away, is properly admitted.

6. ——: **Instructions.** An instruction, even though it correctly states the law, is properly refused if it is properly covered by other instructions given. It is not necessary to give a number of instructions on each point. One instruction on each phase of the case, and thoroughly covering the point, is sufficient.

7. ——: ——. When the instructions given have fully set forth what are the material facts which the jury must find before defendant can be convicted, and the jury are told the defendant is presumed to be innocent and that before he can be convicted, the jury must believe him guilty beyond a reasonable doubt, and that a preponderance of the evidence or a strong probability of guilt is not sufficient, it is not error to refuse other instructions on these same points. Nor is it necessary to define the term "material fact," since all facts admitted by the court in evidence are to be considered by the jury as material.

Appeal from Boone Circuit Court.—*Hon. D. H. Harris,* Judge.

AFFIRMED.

*Sebastian & Sebastian* for appellant.

(1)   The demurrer offered at the close of all the evidence should have been sustained.   There was no evidence that the defendant was guilty of the crime charged.   It was the duty of the court to determine as a matter of law that the evidence did not sustain the charge in the indictment.   12 Cyc. 177; 1 Wharton on Criminal Law (8 Ed.), secs. 174-6; 1 Bouviers Law Dictionary (15 Ed.), 205; 1 Centary Dictionary, 371; State v. Young, 140 S. W. 873.   (2)   Should the court consider that there was sufficient evidence to go to the jury, then we submit that the trial court committed the following errors for which the case should be reversed.   The trial court permitted the prosecuting attorney to introduce conversations between the defendant and the prosecuting witness, as to what their testimony should be before the grand jury that was about to be reconvened, and which returned the indictment in this case, and as to two informations filed against Points & Tyson before court convened over the objection of defendant and refused defendant's instruction "J" which told the jury not to consider this evidence.   State v. Baker, 209 Mo. 444; State ex rel. Foster, 187 Mo. 612; 12 Cyc. 631.   (2)   The court permitted the prosecuting attorney to inquire of each of the six character witnesses of defendant as to their knowledge of defendant's reputation for selling liquor in violation of law; and as to his reputation for writing a number of whiskey prescriptions; and as to his reputation for being an abortionist, when there was not a particle of evidence that the defendant was guilty of any of these crimes.   State v. Sergenthaler, 121 Mo. App. 510; 12 Cyc. 571; State v. Baker, supra; State v. Thornhill, 174 Mo. 364; State v. Oliphant, 128 Mo. App. 252; State v. Spevy, 191 Mo. 87.   (4)   In overruling defendant's instruction "E" which told the jury that the defendant had a right to be a witness

in his own behalf. R. S. 1909, sec. 5242; State v.
Saunders, 106 Mo. 188; State v. Stonum, 62 Mo. 597;
State v. Brandenburgh, 118 Mo. 187; 12 Cyc. 637. (5)
Defendant's instruction No. 2 was proper, as offered,
and should have been given without amendment. The
defendant was entitled to have the term "reasonable
doubt" defined, and especially is this true when the
State's instruction did not properly define it. 12 Cyc.
627; State v. Fannon, 158 Mo. 156. (6) Defendant's
instructions A, B, C, and D properly declared the law
as to defendant's good character, which went to the
jury upon the evidence of six witnesses and was not
directly questioned by the State, but the prosecuting
attorney was permitted to improperly question each
of these character witnesses so as to prejudice the
defendant before the jury. State v. McNally, 87 Mo.
644; State v. Stonum, supra.

*E. C. Anderson,* Prosecuting Attorney, and
*George S. Starrett* for respondent.

(1) The indictment was sufficient under the law
and followed the language of the statutes. Sec. 4352,
R. S. 1909; State v. Biebush, 32 Mo. 276. (2) There
being substantial evidence of defendant's guilt it was
the duty of the trial court to submit the issues of fact
to the jury. Sec. 5212, R. S. 1909; State v. Warner,
74 Mo. 83; State v. Bayne, 88 Mo. 604; State v. Eaton,
166 Mo. 575; State v. Armstrong, 167 Mo. 257; State
v. Pollard, 174 Mo. 607; State v. Fonester, 63 Mo.
App. 530; State v. Spence, 87 Mo. App. 577; State v.
Fulkerson, 97 Mo. App. 599. (3) The conversation
between Hatton and the defendant about the recon-
vening of the grand jury and what their testimony
would be was admissible in the trial of this case as
tending to show the motive of defendant in approach-
ing Hatton on the subject of his leaving the country
and was a circumstance showing defendant's intention

to bribe Hatton, hence there was no error in its admission and the refusal of defendant's instruction "J." And further there was no objection to this testimony at the time it was offered, hence the objection comes too late when raised for the first time on appeal. State v. Moore, 117 Mo. 395; State v. Hope, 100 Mo. 347; State v. Harlan, 130 Mo. 381; State v. Bateman, 198 Mo. 223; State v. Bailey, 190 Mo. 277. (4) The trial court committed no error in refusing to give instruction "E" offered by defendant's counsel, as such an instruction would have amounted to a comment upon the evidence. And for the further reason that instruction number four for the State properly stated the law, and covered defendant's testimony in the case. State v. Hicks, 192 Mo. 431; State v. Miller, 93 Mo. 269; State v. Wright, 134 Mo. 406. (5) Defendant's instruction number two as modified by the court and as requested by defendant's counsel properly declared the law. Also instruction number two given by the court at the request of the State very properly and fully declared the law and has been repeatedly approved by the higher courts of this State. State v. Cushenberry, 157 Mo. 168-181; State v. Nueslein, 25 Mo. 111; State v. Sacre, 141 Mo. 64; State v. Hunt, 190 Mo. 353. (6) It is not error to refuse instructions which cover propositions fully covered by others given. The law relative to defendant's character was clearly and fully defined in State's instruction number three and therefore instructions offered by defendant tended only to mislead and confuse the jury. Harrison v. Lakenan, 189 Mo. 581; State v. Ott, 49 Mo. 326; State v. Brooks, 92 Mo. 542. (7) The refusing of defendant's instructions F, G and H, was proper, as they did not correctly state the law, and tended to mislead the jury, and for the further reason that the law covering the points stated was very clearly and fully laid down in State's instructions, numbered one and two, and defendant's instruction number two as

modified by the court. Harrison v. Lakenan, 189 Mo. 581; State v. Cushenberry, 157 Mo. 168. (8) Defendant complains that the refusal of the court to give defendant's instruction "I" was error as no other instruction given defined the term "material fact." Appellant however, cites no authority requiring that this term be defined. We take it that the term has no technical meaning and is sufficiently understood by the average juror to require no defining. State v. Walker, 232 Mo. 252; State v. Gregory, 170 Mo. 607; State v. Jacobs, 152 Mo. 565; State v. Sattley, 131 Mo. 491; 12 Cyc. 613.

TRIMBLE, J.—This case is a prosecution under section 4352, Revised Statutes 1909, for attempting, by bribery, to induce a witness to absent himself for the purpose of avoiding giving evidence in certain prosecutions for violating the Local Option Law then pending in the circuit court of Boone county against Points & Tyson, a firm of druggists.

The grand jury had returned fifty indictments against said firm. The defendant was a doctor who, for two years, had practiced in Columbia and prior to that had practiced in various other Missouri towns before locating in Columbia. Defendant had written prescriptions for whiskey for the witness Hatton, some of which had been filled by these druggists. Hatton was the witness whose name was indorsed on the back of these fifty indictments. After the druggists had been arrested, one of them sent for the defendant and showed him one of the prescriptions written by the latter for Hatton, and told defendant that "they" were going to try to indict defendant for writing said prescription and saddle it onto him instead of onto them. (It is not shown by the record who "they" refers to; whether it means the druggists were going to try to indict him or the authorities. At any rate defendant admits that he thereupon told the

druggist he (defendant) would go out and see the witness Hatton. What for, is not shown. Defendant got in his buggy and drove out to Hatton's home. Arriving there he invited Hatton to get in and take a ride with him. Hatton complied and they drove down the road for ten or fifteen minutes. The witness Hatton and the defendant disagree as to what occurred during this drive. Hatton says the doctor told him he (the doctor) believed the druggists would be willing to pay him (Hatton) fifty dollars a month and railroad expenses most anywhere he might want to go, and that it would be necessary to stay until another prosecuting attorney was elected; that Hatton replied the druggists were a little late about it now but that he would see him some other time. That an arrangement was then made to meet the doctor the next morning at his office; that the next morning he went to the doctor's office but did not find him in, and went out on the street and met him and thereupon the two went to the office and were closeted together in the private office for ten or fifteen minutes. Hatton testified that in this conversation the doctor said it was nothing to him whether Hatton went or not, that he (the doctor) was not getting anything out of it, but that the druggists could afford to give Hatton a thousand dollars if he would go. Nothing is shown as to what Hatton said he would do in regard to the matter. But the following morning (Sunday) Hatton called the doctor out to his home to see his little girl who was sick with the measles. Hatton testified that on this occasion the doctor informed him that the grand jury was going to reconvene on Wednesday and would probably have both of them before it to testify about "this Points & Tyson business;" and that he (the doctor) was not going to tell them anything but that Hatton could tell what he plased. Points & Tyson sent for Hatton to come over to their store, and Hatton went but what transpired between them is not shown.

Presumably nothing was done as Hatton says they did not say what they sent for him for. Hatton testified that the doctor himself made no offer of money or other consideration to him to leave, nor that he could get any money or other thing for him to leave, but that the doctor said he believed money could be obtained from Points & Tyson to pay him (Hatton) for leaving.

Defendant admits having the conversations with Hatton, but denies that he said anything to Hatton about his leaving. He says that, on the contrary, Hatton told him he (Hatton) didn't have to be there and that if he could get money enough out of Points & Tyson he would go to New Mexico, to which defendant replied that was out of his province, and that the druggists had never mentioned the matter to him in any way. Defendant further testified that the next morning when the two were in his private office defendant did not offer Hatton any money, but that Hatton said he had been subpoenaed and he wished he knew what the penalty was for jumping the county; that if he could get as much as a thousand dollars out of those fellows he would "skip the country." After defendant's arrest on this charge the druggists pleaded guilty to eighty-two indictments for selling liquor.

Defendant filed a demurrer to the evidence which the court overruled. The case was submitted to the jury under instructions, and the jury returned a verdict finding defendant guilty.

The first point raised by defendant is that the evidence is insufficient to show that any offense was committed; that, conceding all that Hatton says is true, still it is not enough to make a case against defendant. Black's Law Dictionary, p. 103, defines an attempt in criminal law to be "an effort or endeavor to accomplish a crime, amounting to more than mere preparation or planning for it, and which, if not prevented, would have resulted in the full consummation of the

act attempted but which, in fact, does not bring to pass the party's ultimate design.'' 1 Bishop on Criminal Law, sec. 728, says it is ''an intent to do a particular criminal thing combined with an act which falls short of the thing intended.''

In State v. Williams, 136 Mo. 293, which was a prosecution for an attempt to bribe a juror, the court held that the body, essence and substance of the offense is the corrupt attempt to influence the juror. The statute, in that case, provided that every person who shall attempt to corrupt a juror by giving or offering to give any gift, etc., shall be punished, etc. There was no actual tender of money nor was there any specification of the amount, yet it was held that the offense was complete.

In the statute, on which the case before us is bottomed, it is provided that ''Every person person who shall, by bribery,  . . .  directly *or indirectly* induce or *attempt to induce* any witness,  . . .  etc., shall be deemed guilty of a misdemeanor.'' In State v. Woodward, 182 Mo. 391, speaking of the statute against attempting to influence a juror, the Supreme Court said: ''It is not to be restricted to those attempts only in which a legal tender of the bribe is made. If so construed, in the future the actual exhibition of the bribe will never be made until the victim has been seduced from the path of his sworn duty and has signified his willingness to be corrupted. While criminal statutes are to be strictly construed in favor of the defendant, the courts are not authorized to so interpret them as to defeat the obvious purpose of the Legislature or to so narrow the words of the statute as to exclude cases which these words in their ordinary acceptation would include. [U. S. v. Wiltberger, 5 Wheat. 76; U. S. v. Hartwell, 6 Wall. 385; Sutherland on Stat. Const., sec. 349 and cases cited.]'' The point is made that the evidence does not show that the defendant ever at any time said that he himself

would give the fifty dollars a month to Hatton, but only that Points & Tyson would, or that he believed they would. The statute, however, says that if the defendant attempts, by bribery or other means, directly or indirectly, to induce the witness, etc., he shall be punished. That is, if by the scheme of bribery or other means, he directly or indirectly attempts to induce the witness to leave, he is guilty. The statute is broader in its scope than the one in reference to jurors and the gist of the offense is the attempt to induce the witness to leave; and the one who thus attempts is guilty whether his attempts is made directly or indirectly and whether it is successful or not. And the means of creating the inducement is not restricted to certain specified acts, but is general in its terms, "by bribery" that is, by the allurements and temptations offered through bribery as an inducement.

Of course, in addition to an intent to induce the witness to leave, there must be some overt act done to carry that intent into execution before the law will take cognizance of it. But the overt act is present in this case. Points & Tyson are indicted on many counts some of which are on prescriptions issued by defendant. They call him in and either tell him they are going to lay it on to him or that the authorities are. They then tell him to see Hatton, and he immediately drives out to Hatton's home and takes him in his buggy down the road for a private talk. During this talk defendant tells Hatton that Points & Tyson will be willing to pay him fifty dollars a month and railroad expenses to go away and stay till a new prosecutor is elected. Hatton is the only witness on the indictments and, if he is away, the whole prosecution will fail. Hatton replies that the druggists are a little late but he would see him again about the matter, and arranges to meet defendant at his office the next morning. He does meet him, and, while the doctor assures Hatton it is nothing to him as he is getting nothing

out of it, yet he hangs before his eyes the tempting prospect of getting a thousand dollars out of the druggists if he will go away. What is this but an attempt to induce Hatton to leave by means of bribery? After this the druggists send for Hatton to come to their store; but for some reason, which does not appear, the delicate subject is not broached. Either Hatton does not appear to be sufficiently amenable, or the price is deemed too much, or it is considered safer not to mention the matter. In State v. Williams, 136 Mo. 293, cited above, it is held that the offense is complete when the attempt is made, no matter what is done afterwards, whether the attempt was rendered successful or not, nor whether the one sought to be influenced is amenable or not. If, after defendant had seen Hatton and held out the inducement of fifty dollars a month from Points & Tyson, the latter had succeeded in obtaining that sum from them in consideration of his absenting himself so that his testimony would not be available to the prosecution, no one could deny that all were guilty of the offense of inducing, by bribery, a witness to absent himself. If so, how can it be said that the efforts of defendant on this occasion, did not constitute an attempt to indirectly induce him by bribery to do the same thing? And, since it is conceded that Points & Tyson asked defendant to see Hatton, and defendant did so pursuant to their request, does this not warrant the jury in inferring that this was the purpose the druggists had, and that defendant was speaking with authority when he told Hatton he could get fifty dollars a month for going away? True the suggestion was craftily veiled behind the word "believe" but, if the jury accepted Hatton's version of the transaction, this made it none the less a tentative offer or proposal to that effect. When men are endeavoring to present such nefarious and dangerous proposals to one of whom they are not sure, they do not speak with the frankness and open-hearted

manner of those engaged in a commendable transaction. And if judges wait until they do, and do not look beneath the smooth exterior of their words to the deeper meaning of their conduct and motives as affected by their circumstances, then courts will be too innocent and guileless to effectively enforce the law against its crafty violators.

Of course, if defendant's version of what happened is true, no offense was committed. But the jury's verdict was that Hattton told the truth, and they are the judges of the facts.

The defendant urges that it was error to admit evidence as to the conversation between defendant and Hatton concerning the reconvening of the grand jury. But as no objection was made to this testimony at the time, the assignment cannot be considered. Defendant's instruction "J" telling the jury to entirely disregard this testimony was properly refused as it was a circumstance which could be considered in determining defendant's motive in getting Hatton to leave, and also his intention to bribe Hatton, if possible, and that he was interested in what Hatton's testimony would be before the grand jury.

Complaint is made because the court refused a number of instructions asked by defendant. The first three of these related to the defendant's good character, but as a correct instruction on that subject was given, the refusal of these was not error. The same is true of four others asked by defendant on the subject of reasonable doubt. The court gave one for the State and one for the defendant on this subject which were correct, and that was sufficient. Instruction "I" asked by defendant was properly refused as one on the same subject, i. e., credibility of witnesses, was given. It is true the defendant's instruction attempted to define the term "material facts" but the definition given did not make the term any clearer. No authority has been cited showing that the term has any technical

meaning or should be defined. In fact, it is sufficiently understood by the average juror to require no definition. All facts admitted by the court are material so far as the jury are concerned, and to attempt to define the term would confuse instead of enlighten. [State v. Walker, 232 Mo. 252; State v. Gregory, 170 Mo. 598, l. c. 607; State v. Satley, 131 Mo. 491.]

Defendant's instruction "E" was properly refused, at least it was not error to do so. It told the jury that defendant was presumed to be innocent and had a right to testify and the jury had no right to disregard his testimony because he was the defendant But the jury were told in the instructions given that they must consider the case on the evidence submitted, that the defendant was presumed to be innocent and before he could be convicted the State must show his guilt beyond a reasonable doubt; that they could not find him guilty on the weight or preponderance of the evidence, nor even on the ground that the probability of guilt is strong; that they must consider his good character and all the evidence in the case. While instruction "E" would not have been erroneous if given, yet it was so thoroughly covered by those given that no objection can be made to its refusal. If it had been given, then the court would have been required to instruct for the State that the fact that the defendant was on trial testifying in his own behalf should be taken into consideration in determining the weight to be given his testimony. Instead of giving either of these instructions, however, the court gave a general instruction applicable to all witnesses alike, defendant included. We think this is the better practice and avoids any appearance of commenting upon the evidence.

Finally it is urged that error was committed in allowing the prosecutor to ask defendant's character witnesses on cross-examination if they had ever heard of defendant being convicted of violating the liquor

laws, or of writing illegal whiskey prescriptions, or that he was an abortionist. An examination of the record discloses that no objection was made to this testimony. Hence, it cannot be considered here. But even if it had been objected to, it was not error. The witnesses thus asked had testified to the defendant's general reputation being good, and the State had the right to cross-examine them to see if their judgment as to his reputation was well founded. Defendant, while on the stand, had admitted he had been convicted of liquor violations, and while there was no testimony. showing that he had ever procured abortions, yet we do not think the evidence shows that the prosecuting attorney included the word "abortionist" in his question for the purpose of prejudicing the jury against defendant. And as the witnesses all denied having heard anything at all against defendant it is hard to see in what way he was prejudiced. The offense charged is a very serious one, striking at the very foundation of justice and the pure administration of the law. The jury have said the defendant is guilty, and as there is no error in the trial, the verdict must stand. The judgment is affirmed. All concur.