State v. Kelley.

## THE STATE v. JAMES E. KELLEY, Appellant.

Division Two, December 12, 1905.

1. **INFORMATION: Signature of Prosecuting Attorney: Initials.** The signing of an information by a prosecuting attorney by the initials of his given name and as prosecuting attorney is sufficient.

2. **FLIGHT: Evidence.** Testimony of the sheriff and constable that they made diligent search for defendant at his home, but could not find him, and finally located him in another county, when taken in connection with letters written by defendant to the prosecutrix, in which he declared his intention of leaving and taking her with him, and her testimony that defendant had arranged to meet her and take her away—was sufficient evidence of defendant's flight to justify its submission to the jury.

3. **INSTRUCTION: "Lack of Evidence:" Meaningless Phrase.** An instruction told the jury: "Before you can convict the defendant you must be satisfied from all the evidence, or lack of evidence, that he is guilty, which guilt must be established by the evidence beyond a reasonable doubt," etc. *Held*, that the phrase, "lack of evidence," as used in the instruction, was wholly uncalled for and utterly meaningless, but that the instruction viewed as a whole could not have misled the jury, and therefore the giving of it did not constitute reversible error.

4. **CARNAL KNOWLEDGE: Correspondence: After Crime Committed.** Letters written by defendant to the prosecutrix after the criminal intercourse, which tended to corroborate the testimony of the prosecutrix, and were in the nature of an admission of defendant's criminal conduct, were properly admitted in evidence.

5. ————: **Instruction: Singling Out Witness: Invited by Defendant.** When defendant has singled out the prosecuting witness and asked the court to instruct the jury that the prosecutrix

State v. Kelley.

stands impeached because she has made contradictory state-ments, and that the jury cannot convict upon her testimony (which instruction was properly refused) he is in no position to complain because the court instructs the jury that they may consider the circumstances under which the prosecutrix made the prior contradictory statements, her age, condition in life and environments, in connection with all the other evidence in the case.

6. ——: ——: **Letter.** Defendant requested the following in-struction: "The letter in evidence . . . even if you should believe the defendant wrote it, does not prove the charge against the defendant, and upon said letter alone you can not convict him." This instruction the court gave after adding, "but you should consider said letter in connection with all the other evidence in arriving at your verdict." *Held,* no error.

7. ——: **Previous Chaste Character: Presumption of Law.** The law presumes that every woman is chaste until the contrary appears.

8. ——: ——: **Evidence.** When it was shown that prosecu-trix was a school girl of fifteen years, living in her father's family, that no man prior to defendant had ever taken liberties with her person, and that she had never had sexual intercourse with any man, and defendant offers no evidence to the contrary, the previous chaste character of the prosecutrix is sufficiently proved.

Appeal from Polk Circuit Court.—*Hon. Asbury Burk-head,* Judge.

AFFIRMED.

*Rechow & Pufahl* and *Johnson & Sea* for appel-lant.

(1) An initial is no name. The motion to quash should have been sustained. The information must be presented by the prosecuting attorney, and this means in the name by which he was elected, commissioned and qualified. R. S. 1899, sec. 2477; Skelton v. Sackett, 91 Mo. 379; Martin v. Barron, 37 Mo. 301; 1 Bishop on Criminal Procedure (1 Ed.), secs. 119 and 120; State v. Martin, 10 Mo. 391; State v. Wall, 39 Mo. 534. (2) Defendant's motion to strike out the pretended evi-dence as to flight should have been sustained.

*Herbert S. Hadley,* Attorney-General, and *N. T. Gentry,* Assistant Attorney-General, for the State.

(1)   There is no merit in the contention that the name of the prosecuting attorney should have been written in full in and at the end of the information. The way in which he usually signed his name, "L. Cunningham," was sufficient. State v. Brock, 186 Mo. 457. (2)   The letter written by defendant to the prosecutrix was competent evidence. State v. DeWitt, 186 Mo. 71; State v. Sibley, 131 Mo. 528; Bracken v. State, 111 Ala. 68; State v. Bell, 79 Iowa 117; Underhill on Crim. Evid., secs. 528. (3)   The State's evidence on the subject of the previous chaste character of the prosecutrix was sufficient. It is the fact of her previous chaste character, and not of her previous good reputation, that the statute requires. R. S. 1899, sec. 1838; State v. Napper, 141 Mo. 404; State v. Hunter, 171 Mo. 440.

GANTT, J.—On April 28, 1904, the prosecuting attorney of Polk county filed an information in the circuit court, charging defendant with having carnal knowledge of Blanch E. Long, an unmarried female of previous chaste character, between the ages of fourteen and eighteen years. The alleged criminal act occurred on January 15, 1903; the information was duly sworn to by the prosecuting attorney. After a plea of not guilty, defendant filed an affidavit asking for a change of venue on account of prejudice of Hon. Argus Cox. The application was granted, and Hon. Asbury Burkhead, judge of the thirty-first judicial circuit, was called into the case. After the overruling of his motion to quash, and granting him a continuance, defendant was put upon his trial at the October term, 1904, and convicted, his punishment being assessed at two years in the penitentiary .

The prosecuting witness   testified   that   at   the

time of the commission of the alleged crime she resided with her parents in Polk county, Missouri, a few miles north of Bolivar, in the Hayden school district. The defendant was her school teacher for six months, and often accompanied her along the road; that he lived about a quarter of a mile from her father's. The school usually closed every day at 4 p. m. There was a spring house a short distance from her father's and tolerably close to the public road, the house being surrounded by timber. To this spring she went every afternoon for water, and defendant often met her there about dusk; this was during September, 1902, and January, 1903. At these meetings defendant would hug and kiss prosecutrix, and had sexual intercourse with her several times. Defendant, at the time professing love for her, told her that he would take her away, and they would be happy together. A short time after this school term closed, defendant moved away, and prosecutrix and her parents moved to Bolivar. Defendant visited them at their home, remained over a night or two with them. Defendant told her not to say anything about their relations, or it would send him to the penitentiary. Afterwards defendant moved to Fleming, and corresponded with her. At defendant's suggestion, she used his postoffice box, No. 335, at Bolivar. She received a letter from him once a week, which she answered. In these letters defendant still continued to tell her of his affection for her; these letters were addressed to B. E. K., box 335. A letter written by defendant on January 22, 1904, addressed in that way, was received by prosecutrix, lost by her on her way home from school, found by one of the school girls and given to her mother. Prosecutrix was unmarried and of previous chaste character; defendant had a wife but no children living at this time. Prosecutrix never told of her intimacy with defendant till some time after this letter was found. She had made arrangements with defendant to go on the train with him to Kansas

City the next Sunday; but the letter was lost and found on the Thursday before. Defendant had promised that he would get a divorce from his wife and marry prosecutrix; this promise was made at the time of the first act of intercourse. At defendant's request she swore before the grand jury that defendant never had had sexual intercourse with her. At defendant's request she made an affidavit before the probate judge to the same effect. This affidavit was procured at the request of one of defendant's attorneys and signed at a time when neither of the parents of the prosecutrix was at home, and signed in the presence of defendant. When her mother was talking with her a few days later the prosecutrix admitted to her that defendant had had sexual intercourse with her. An affidavit was made before the circuit clerk and this information was filed.

The postmaster at Bolivar testified that 'box 335 was rented by defendant and used by him while he lived there. Just before defendant left Bolivar, he rented this box for another quarter and paid the box rent. Letters were frequently received at this postoffice, directed to B. E. K., box 335, and were put in this box. A letter thus directed and sent was identified by prosecutrix and read in evidence; it is as follows:

"Flemington, Mo., Jan. 22, 1904.
"My Darling Blanche:

"I will write you today it is a cold lonesome looking day and oh how I long to be with you darling and have a good time; say Darling I read your sweet letter I got when I was there. You said you tried to think you didn't love me but could not think so. O! my Darling I don't try to think I don't love you for I do love you better than anyone else. Oh! I wish I could be with you as I was last winter; yes I wish I could see your sweet little face coming to meet me as you did last winter when you would meet me at the spring house and put your arms around me and give me a

sweet kiss but alas! those dear school days have passed and gone but my love is still as true to you as it was then I dream of you often. I get into trouble sometimes and think perhaps my Darling may go back on me and take another, but I can't believe you will Oh! Darling I have just been thinking about the last night of the Haden school how hard it was to leave you then but Darling it won't be long till we will be together all the time if you stick to me.

"Darling, do stick to me all the time I can see your sweet face in my dreams Oh! the night I was at your house was the happiest time for me for a long time Oh! my sweet littel wife, how I love you.

"Darling, I just got your letter and Ada and mother are going to Mr. Franckas. I am glad you are not going because I am not going. Darling don't worry about your things. If you can't get them I can buy more for you, and if nothing happens we will leave in two or three weeks. Your letter was so sweet and you are sweeter than anything or anybody in the world. Yes, we must love God best of all and one another next.

"Be watching for me any time darling.

"by by wife dear
"J E K to B E K.
"1000 million X O

"Yours forever
"I will kiss Cicil for you now."

Prosecutrix, her mother and a banker in Bolivar testified that this letter was in defendant's handwriting. Prosecutrix also testified that defendant told her that when he wrote X and O he meant hugs and kisses.

The constable and sheriff testified that when the warrant for the arrest of defendant was placed in their hands they made diligent search for him in and around his home but could not find him. He was finally ar-

rested by the marshal of Weaubleau, in Hickory county.

Defendant took the witness stand and simply denied having had sexual intercourse with prosecutrix. The probate judge testified that he read the affidavit to prosecutrix before she signed it, and told her not to sign it unless it was true. No one was present at the time at her home, except the probate judge, prosecutrix and defendant. There was some evidence that defendant had a good reputation prior to this time; but some of defendant's witnesses on that subject admitted, on cross-examination, that there had been two ugly reports reflecting on defendant's character prior to this trouble.

The instructions and assignments of error will be noted in the body of the opinion.

Numerous grounds for reversal of the judgment have been advanced by the counsel for defendant, both in their brief and in oral argument. These will be considered in the order of their assignment.

I. The information was assailed by a motion to quash for the reason that the prosecuting attorney Lieutellus Cunningham described himself as "L. Cunningham" in the body of the information and signed the same simply by his initial instead of his full name.

Counsel recognize that in State v. Brock, 186 Mo. 457, this court in the case of an information signed in this same manner by this same prosecuting attorney, held that the signing of an information by a prosecuting attorney by the initials of his given name and as prosecuting attorney was sufficient, but they urge a reconsideration of that decision. On the hearing of the motion to quash it was stipulated that Lieutellus Cunningham was the duly elected, qualified and acting prosecuting attorney of Polk county and that it was his usual custom to sign all official documents by the name and style of "L. Cunningham."

Among other cases cited by counsel for defendant in support of their contention is Skelton v. Sackett, 91 Mo. 377, wherein the name of a non-resident defendant was designated as Q. R. Noland and there was no personal service, and it was held void, but in the subsequent case of Mosely v. Reilly, 126 Mo. 124, an order of publication directed to "C. T. Clements" describing him as the owner of the land against which a judgment was sought to enforce delinquent taxes, was held sufficient.

The decision in this last case is entirely in consonance with reason and common sense. If a party take a deed to himself by his initials and put it to record, no good reason can be assigned why he should not be sued by the name which he has assumed to the public. This is true in business transactions in which a Christian name is rarely ever written in full. In 14 Ency. Pl. and Pr., p. 277, the rule is stated that one may adopt any name he pleases in his business transactions and such name or any name by which he is usually known and called is sufficient by which to designate him in civil or criminal proceedings instituted against him, and he is estopped from repudiating a name under which he contracts. If this is true as to a defendant, how much stronger the rule should be where one sues or prosecutes by the usual initial of his given name, and at the same time designating himself, as in this case, "as prosecuting attorney." We think now as we did in the Brock case that there is no merit in the point. No possible injury could come to the defendant because the prosecuting attorney did not write his given name in full but signed it in his usual business and official way.

II. It is next insisted that the court erred in not striking out the evidence as to the flight of the defendant.

The constable and the sheriff both testified that when the warrant was issued for the arrest of defend-

ant they made diligent search for defendant at and around his home and at different places where they had reason to expect he might he found, and could not locate him, and finally heard he was at Weaubleau, in Hickory county, where they secured his arrest by the marshal of Weaubleau. No explanation was vouchsafed by defendant as to his absence from his home and county. While the evidence of flight was not as strong as it might have been, we cannot say it was so wanting in probative force when taken in connection with the written assertion of defendant of his intention to leave with the prosecutrix and her testimony that he had arranged to meet her and go to Kansas City. We think an inference might legitimately have been drawn by the jury that he was concealing himself with a view to avoid arrest until he and the prosecutrix could flee the country.

III.   The instructions are challenged.   The fourth instruction is in these words: "Before you can convict the defendant you must be satisfied from all the evidence, or lack of evidence, that he is guilty, *which guilt must be established by the evidence beyond a reasonable doubt,* but a doubt to authorize an acquittal on that ground alone should be a reasonable one and not a mere possibility of innocence."

It is apparent, we think, that this was a clumsy effort to conform the instruction on reasonable doubt to a remark in State v. Blue, 136 Mo. l. c. 44, but what was there said in no manner justifies the interpolation of the words *"or lack of evidence,"* in the connection in which they appear in this instruction.

Certainly the circuit court did not mean to instruct the jury that a failure of proof by the State would justify a conviction, because immediately thereafter it told the jury that *"the guilt of defendant must be established by the evidence beyond a reasonable doubt."* The phrase, "lack of evidence," while wholly uncalled for, must be treated as utterly meaningless when con-

sidered with the context of the instruction. Viewed as a whole the instruction could not have misled the jury, and we would not be justified in reversing the cause on this ground.

IV. It is urged that the court should have excluded the letters and correspondence between defendant and prosecutrix which took place after the alleged criminal intercourse.

We think there was no error in the action of the court in this regard. The letters tended strongly to corroborate the testimony of the prosecutrix and were in the nature of an admission of defendant's criminal conduct. It was not evidence of a new crime but related to the offense for which he was on trial. [State v. DeWitt, 186 Mo. 61; State v. Sibley, 131 Mo. 528, 529.]

V. The instruction on good character was in the interest of defendant and such as has often been approved by this court.

VI. The criticism of the instruction on flight, we think is not well founded. If the jury found that the defendant fled from the county to avoid arrest and trial for the offense charged, then it did become a fact which they might take into consideration in determining his guilt or innocence.

VII. The defendant prayed the court to give the following instruction: "One way of impeaching a witness is by showing that she made different statements or some differently from the testimony given at the trial, and in this case it stands admitted by the prosecutrix, Blanche Long, that she swore differently before the grand jury at the last April term of this court. She therefore stands impeached and you cannot convict upon her testimony." Obviously this instruction should not have been given, when all the testimony is considered.

191 Sup—44

Instead, the court gave the following instruction: "Although you may believe from the evidence in this case that the witness Blanche Long made statements under oath at times previous to her examination in this case, at variance with and contradictory to her testimony in this case, yet you may consider the circumstances under which she made such prior statements, the age of the witness at the time, her condition in life and her environments, together with her relation to the parties interested in the case, and the whole in connection with all the other evidence in the case in determining the truth as to the questions at issue."

It is now insisted this instruction was error in singling out the one witness and commenting on her evidence. It must be remembered the defendant had singled out this witness and asked the court to direct the jury she was impeached and that they could not convict on her testimony. As already said, the court properly refused this instruction, but having been specially requested to instruct on her evidence, the court then gave the ninth instruction as above. We do not think the defendant is in a position to complain of this charge. While we think the matter might have properly been left with the sixth instruction, the instruction is not a comment on the evidence of the prosecutrix. It leaves the whole of it, the unfavorable and the favorable, all to the jury to consider. It is no more so than the sixth instruction. Invited as it was by defendant, we do not think it reversible error.

VIII. Clearly the eleventh instruction was not error. It was asked by defendant in these words: "The letter in evidence of date January 22nd, 1904, even if you should believe the defendant wrote it, does not prove the charge against the defendant, and upon said letter alone you cannot convict him." To this the court added, "but you should consider said letter in connection with all the other evidence in arriving at your verdict." There is no merit in this assign-

ment. The letter was competent, damaging evidence and it was the duty of the jury to consider it.

IX. It is insisted that error was committed in not giving an instruction limiting the effect of the letters which were offered to prove defendant's signature to the letter in evidence by comparison. Those letters are not in the record and we have no means of judging whether they could have prejudiced the defendant; but as the offer was simply to prove the handwriting, the jury could not have been misled as to their purpose.

X. The final contention is that there was no proof that the prosecutrix was of previous chaste character. The evidence was that at the date of the commission of the offense she was a girl fifteen years old, a school girl. She had never received the attentions of any man. Had lived in her father's family and no man had ever taken any liberties with her person before the defendant. There is not a syllable of evidence tending to impeach her good character. Evidence of her general reputation for chastity would not have availed her because the statute required previous chaste character, not mere repute.

The law presumes that every woman is chaste until the contrary appears, and it was said in State v. McCaskey, 104 Mo. l. c. 648: "Evidence of previous chastity of the seduced woman which is required in some States, must in the nature of things be only slight, but there can be no difficulty in proving 'good repute' as required by our statute if the woman be of 'good repute.'" In the 6th "Cyclopedia of Law and Procedure," p. 978, "Chaste" is defined as, "pure from all unlawful commerce of sexes; applied to persons before marriage, it signifies pure from all sexual commerce, undefiled." When, therefore, it was shown in this case the prosecutrix was a school girl of fifteen years, living in her father's family, and had never had any men associates; that no man prior to defendant

had ever taken liberties with her person and she had never had sexual intercourse with any man, the State's case was made. If defendant had been able to show that the contrary was true; that she had in fact had sexual intercourse with a man previous to her defilement by defendant, then the State should have failed. But no such evidence was offered and no attempt was made to rebut the State's case. This point likewise must be ruled against defendant. We have considered all the grounds for reversal and in our opinion there was no reversible error committed and the judgment must be and is affirmed.

All concur.