THE STATE v. DANIEL TAYLOR, Appellant.

Division Two, February 15, 1916.

1. CARNAL KNOWLEDGE: Evidence of Good Reputation. In a prosecution for carnal knowledge of a female of previous chaste character, testimony to the effect that her general reputation for chastity in the community in which she lived, prior to the alleged occurrence, was good, is admissible. [Refusing to follow *dictum* in State v. Kelley, 191 Mo. l. c. 691.]

2. **SPECIFIC ASSIGNMENT: All Law of Case.** An assignment in the motion for a new trial that the court failed to instruct, the jury as to all the law arising upon the issues in the case, which does not specify upon what point the court failed to instruct, does not raise a point for appellate review.

3. **CARNAL KNOWLEDGE: Issuable Matters.** In a prosecution for carnal knowledge of an unmarried female of previous chaste character between the ages of fifteen and eighteen years, the question of whether or not she consented to the acts of sexual intercourse is not material to the issue, and even though her testimony tending to show that she did not consent seems unbelievable, that does not affect a verdict of guilty. The material issues are (a) that she was an unmarried female between the ages of fifteen and eighteen years; that (b) defendant had sexual intercourse with her and (c) that prior to the act charged she was of chaste character.

Appeal from Nodaway Circuit Court.—*Hon. William C. Ellison,* Judge.

AFFIRMED.

*Shinnabarger, Blagg & Ellison* for appellant.

*John T. Barker,* Attorney-General, and *Kenneth C. Sears* for the State.

(1) Prosecutrix's character for chastity was in issue. It could be established by her general reputation regardless of any nice distinction between "character" and "reputation." 2 Wigmore on Evidence, section 1620; Carroll v. State, 74 Miss. 690; In re Vandiver, 4 Cal. App. 654; State v. Connor, 142 N. C. 705; State v. Kelley, 191 Mo. 691. In the following cases the evidence was admitted but the question was not discussed. State v. Schenk, 238 Mo. 440; State v. Pipkin, 221 Mo. 458; State v. DeWitt, 186 Mo. 63. (2) The defendant did not properly object to a failure to instruct upon all the law; and since the fourth point in the motion for a new trial is not specific, the omission of the court, if any, is not open for review. State v. Conway, 241 Mo. 271; State v. Douglas, 258 Mo. 281.

WILLIAMS, C.—Upon an information charging him with the carnal knowledge of an unmarried female of previous chaste character between the ages of fifteen and eighteen years, defendant was tried, in the circuit court of Nodaway County, found guilty, and his punishment assessed at two years' imprisonment in the penitentiary.

The evidence upon the part of the State tends to establish the following facts:

In July, 1913, the date of the alleged crime, prosecutrix, fifteen years and six months of age, and unmarried, resided, with her parents, on a farm in Nodaway county. At that time, the defendant, a young man, nineteen years of age, was in the employ of the father of the prosecutrix as a farm hand and resided at the home of prosecutrix's father very much the same as if he were a member of the family. One afternoon, about the middle of July, 1913, the father and mother of prosecutrix went to the town of Graham, on an errand, leaving at the house the defendant, the prosecutrix and four other younger children. A short time after the parents left, prosecutrix was in one of the bedrooms doing some house work, when she heard defendant enter the house. He immediately came into the bedroom where she was. Upon coming into the bedroom, he locked the door, pulled down the blinds, threw her down on the bed, overcame her resistance and had intercourse with her. While this was occurring, three of the other children, including a fourteen-year-old girl, were out doors, at play. The youngest child, one year old, was in some other portion of the house.

After the transaction, defendant left the house and prosecutrix did not see him again until after her father and mother returned about four or five o'clock that afternoon. She did not tell her father and mother for the reason that she states the defendant had told her she would always regret it if she did. Prosecutrix

was in good health and weighed about one hundred and thirty pounds and stated that she used all the force possible; that she was not bruised or scratched nor was there any laceration of the parts. She stated that she did not scream because defendant told her not to and she was afraid of him.

Defendant continued, after the occurrence, to reside at the farm until August 6, 1913, upon which date he and the mother of prosecutrix had some disagreement, and defendant left. He again returned to work on the farm, December 1, 1913, and remained until some time in January, 1914.

Defendant had never offered prosecutrix any indignities prior to the occurrence in July, 1913, and never made any further advances except about Christmas time, 1913, at which time she refused him.

Sometime in January, 1914, the mother and sister of defendant visited the home of prosecutrix. It does not appear what was said by the parties on that occasion but, on the following day, the family physician was summoned and, after an examination, the physician thought that prosecutrix was pregnant. Later, on March 17, 1914, prosecutrix was taken to a maternity hospital in Kansas City and there, on April 17, 1914, she gave birth to a child.

Prosecutrix testified that she had never had intercourse with anyone prior to the above-mentioned time.

Evidence was introduced to show that the reputation of prosecutrix for chastity in that community, prior to the alleged offense, was good. It further appears that she had not kept company with other boys.

George Herron, a neighbor of the prosecutrix, testified that, sometime in the winter following the alleged occurrence in the summer, defendant asked him what would be the penalty "if a fellow that wasn't of age would get a girl in a fix that wasn't of age;"

and asked what would be the consequences if he would marry her. The witness told defendant that if the girl was not of age, he would have to get the consent of her parents before he could get a license to marry her. The defendant then said, "I guess I have a move coming." Later, in another conversation, the defendant admitted that it was the prosecutrix who was in trouble.

The evidence upon the part of the defendant tended to establish the following facts. Defendant, testifying in his own behalf, stated that there was nothing improper between prosecutrix and himself in the year 1912, but that about the first of May, 1913, he and prosecutrix were in the kitchen while he was making a prepartion for a sick horse and that "she kept hanging around me, standing up close to me and I put my arms around her and kissed her." That a short time thereafter they met in the cellar while putting away the milk and defendant there hugged and kissed the prosecutrix. The prosecutrix then said, "If you are going to do anything, hurry up and do it or the folks will catch us." That he then proceeded to have intercourse with the prosecutrix. Defendant denied the story related by prosecutrix concerning his having intercourse with her on the day that her parents went to town, but stated that, after the occurrence in the cellar, in May, he continued to have intercourse with the prosecutrix once or twice a week until he left the place in August, 1913; that prosecutrix would come to his room at night after her father and mother had retired. A few days after defendant quit working at the farm, he returned a buggy belonging to the father of prosecutrix and, at that time, he had a conversation with the prosecutrix in which he reminded her that she had told him that he was the only one with

whom she had been intimate and then told her that "Curly" Deacon had told him that Clyde Goodpasture had told Deacon that he had been intimate with the prosecutrix, prior to the time that defendant had had intercourse with her. Defendant testified that thereupon, prosecutrix admitted to him that the accusation was true.

Five witnesses testified that defendant's reputation for morality and chastity was good in that community, prior to the time of his arrest.

In rebuttal, the prosecuting witness denied that she had admitted to the defendant that she had been intimate with Clyde Goodpasture. Goodpasture testified denying that he had ever had improper relations with the prosecutrix and also denied that he had so stated to Deacon. Deacon testified that he did not remember of telling the defendant of this occurrence and stated that Clyde Goodpasture had never told him that he had had intercourse with the prosecutrix.

Two of the attorneys, representing the defendant, then testified that, a short time before the trial, Deacon was in their office and had told them that he had told the defendant of the alleged Goodpasture incident.

We have not been favored by appellant with a brief, but pursuant to our statutory duty in the premises, we will review the record and discuss the points raised in the motion for a new trial.

## OPINION.

I. The first two grounds in the motion for a new trial assign error in the admission and exclusion of evidence. The only matter coming within

**Reputation.** either of these two grounds and of sufficient importance to merit discussion is the matter of

introducing, over the objection and exception of defendant, the testimony to the effect that the general reputation of prosecutrix for chastity, in the community where she lived, prior to the alleged occurrence, was good.

One of the requirements of the statute under which defendant stands charged is the requirement that prosecutrix must be of *previous chaste character*.

While it is true that reputation and character are not synonymous, yet the former is always some evidence from which the latter may be inferred and is, therefore, admissible. The correct rule in this regard is stated in 2 Wigmore on Evidence, section 1620 (1), as follows:

"As to *chastity* or its opposite, no doubt has ever arisen, except in a single and peculiar action. In the statutory action or prosecution for seduction of a woman of 'previously chaste character,' the question first arises whether this 'character' is actual character or reputation. Assuming the former view to be taken, then, although actual character is the fact in issue, there is no reason why reptuation should not be admissible, as in all other issues, to prove the chaste or unchaste character. But in some jurisdictions the court's adoption of the view that the actual character is the fact in issue has led it erroneously to exclude reputation as evidence of that character."

To the same effect are the following authorities: Carroll v. State, 74 Miss. 688, l. c. 690; State v. Lockerby, 50 Minn. 363; In re Vandiveer, 4 Cal. App. 650, l. c. 654; State v. Connor, 142 N. C. 700, l. c. 705.

In State v. Kelley, 191 Mo. 680, l. c. 691, there appears to be a mere *dictum* to the contrary, which should not be followed.

II.   The third ground of the motion attacks in-
structions numbered 1, 2 and 3.   It would serve no
**Instructions.** useful purpose to copy these instructions
into the opinion.   We have carefully exam-
ined the same and find them to be in proper form and
free from error.

III.   The fourth ground complains because the
court failed to instruct the jury as to all the law aris--
ing upon the issues in the case.   Since
**Specific Assignment.** the above does not *specify* upon what
point the court failed to instruct, it does.
not raise a point for appellate review.

IV.   The remaining grounds of the motion raise
the question as to the sufficiency of evidence to sup-
port the verdict.   The evidence is suffi-
**Sufficiency of Evidence.** ciently stated in the foregoing statement.
While some of the story of the prosecu-
trix appears to be very unusual and unbelievable, yet
the unusual portion of her testimony refers to matters.
not necessary to be proven to sustain a conviction, to-
wit, her testimony tending to show that she did not
consent to the act of intercourse.   The question of
whether or not she consented to the act of intercourse
was not material to the issues.   The material issues
were whether she, as an unmarried female, between.
the ages of fifteen and eighteen years, had intercourse
with defendant, as charged and submitted to the jury,.
and, if so, was she of previous chaste character?
We are of the opinion that the evidence was am-
ply sufficient to sustain the verdict.

The judgment is affirmed.   *Roy C.,* concurs.

PER CURIAM.—The foregoing opinion by WIL-
LIAMS, C., is adopted as the opinion of the court.   All
the judges concur.