STATE v. ORVA WALKER, Appellant.—No. 40342.—208 S. W. (2d) 233.

Division One, February 9, 1948.

L. *George Schubert* and *Wm. D. Roberts* for appellant.

*J. E. Taylor,* Attorney General, and *Harry H. Kay,* Assistant Attorney General, for respondent.

[234] DALTON, C.—Appellant was charged by an information with the crime of having feloniously had carnal knowledge of an unmarried female of previous chaste character between the ages of 16 and 18 years, as defined by Sec. 4394 R. S. 1939. Upon trial he was convicted and his punishment fixed "at $100 fine and 6 months in the County jail."

According to the state's evidence prosecutrix became 16 years of age on September 3, 1945. She met appellant at the Egypt Grove Church, near Hocomo in Howell County, in October or November 1945, after his return from military service, and she kept company with him during "a protracted meeting" held at the Egypt Grove Church. The meeting lasted about three weeks, beginning in November 1945 and extending into December of that year. Prosecutrix had gone with appellant a time or two before the meeting opened. During the meeting appellant came to her home for her and they didn't miss very many nights. Most of the time her parents came with them in appellant's automobile. Near the last of the meeting, two or three days before it closed, the exact date not fixed, prosecutrix attended a night meeting with appellant alone. He parked his automobile near the church building. After the church services, they got in his automobile, but did not leave immediately as appellant said he was not ready to leave. When all others had left the grounds, appellant told prosecutrix he was going to have sexual intercourse with her, and then over her objections, he proceeded to accomplish his purpose in the front seat of his 1936 Chevrolet automobile. Prosecutrix did not consent, nor did she resist or make any outcry. She did not advise her parents or others of the occurrence until after her pregnancy appeared and she had consulted a physician. The offense took place in Howell County. Prosecutrix was unmarried an had never previously had sexual intercourse with any man. Appellant was 25 years of age. Prosecutrix did not go with him very many times after the alleged offense. She gave birth to a child on September 4, 1946 and said that appellant was the father of her child. Three witnesses for the state testified that, prior to the time her pregnancy became known, her reputation for virtue and chastity was good.

Appellant did not testify as to whether or not he had had sexual intercourse with the prosecutrix at the time and place testified to by her. He testified that he returned from three years military service the night before Halloween in 1945. He met the prosecutrix at the Egypt Grove Church on a Sunday night before the "protracted meeting" started. The first night he met her he asked her

to go for a ride with him in his automobile and she consented. About 8 P. M. they drove to a "by-road," about a mile away from the church, where he stopped his automobile and asked her if she wanted to get in the back seat. She did, and moved to the back seat, where appellant had sexual intercourse with her with her consent. They then returned to the church services, coming a little late. According to appellant, the "protracted meeting" began about two weeks after Halloween and lasted for three weeks. Three witnesses testified to appellant's good reputation in the community in which he lived for being truthful, honest, upright and law abiding. Two witnesses, other than appellant, testified to having had sexual intercourse with prosecutrix. One of the [235] witnesses fixed the date as September 1945, and the other as in March or April 1946.

Error is assigned on the admission of alleged incompetent testimony. Prosecutrix testified that, on the night of the alleged offense and after appellant had returned her to her home, he asked her what she was "going to do about it." She told him that, if he would do the right thing about it, he would go ahead and marry her and she would marry him. Appellant promised her that he would marry her. After the prosecutrix had so testified, appellant objected to the testimony and moved to strike it out. The grounds assigned were that the statement did not prove any issue in the case and that the promise was made after the alleged offense testified to by the prosecutrix. Over the same objection, the prosecutrix was further permitted to testify that she and appellant talked later about getting married and "even went as far as getting a license and having blood tests taken." Prosecutrix further testified that appellant said he was 21 years of age, but she later learned that he was older. Objection was made "to what she later learned," the objection was overruled and she testified that, when she and appellant went to get the marriage license, appellant said he was 25 years old. Appellant moved to strike out this testimony for the reasons theretofore assigned and for the further reason that the evidence was highly prejudicial to defendant. He further moved that the jury be instructed not to consider any part of such testimony. The motions were overruled.

Appellant now contends the evidence concerning the alleged promise to marry, the taking of the blood tests and the procurement of a marriage license did not prove or tend to prove any single element of the offense charged, nor any issue in the case; that the evidence was not admissible for any purpose; and that its admission was highly prejudicial and constituted reversible error. Appellant relies upon State v. Foster, (Mo. Sup.), 225 S. W. 671, 672 and State v. Johnson, (Mo. Sup.), 234 S. W. 794, 796. These cases are not controlling in view of the particular facts and circumstances attending the promise of marriage in this case.

In State v. Foster, supra, letters written by the defendant to the prosecuting witness a year and two years before the date of the act complained of were held to have been erroneously admitted in evidence. The court said: "The letters, while tending to show an engagement to marry, did not tend to show an intent to commit rape, nor were they admissible for any other purpose, under any rule laid down in the books for the admission of proof of other crimes for which defendant might be tried."

In State v. Johnson, supra, the offense was alleged to have been committed on or about January 6, 1918. Letters written subsequently by defendant, apparently confirming the promise of marriage testified to by the prosecutrix, were held to have been erroneously admitted. The court said: "The defendant admitted having had sexual relations with the prosecutrix, beginning in January, 1918. The state asserted that at the time of the first offense the prosecutrix was under the age of 18 years, and that she was then of previous chaste character. The defendant denied both averments. These were the only issues. The court, over the defendant's objection, admitted in evidence eight letters written by the defendant to the prosecutrix, the first dated September 11, 1918, and the last January 7, 1919. No doubt these letters would be admissible in evidence in an action for breach of promise of marriage, but not a line in either one of them has any relevancy to the issues in this case. They could only serve to distract the attention of the jury from the facts in controversy, and were improperly admitted in evidence. The court should have restricted the evidence to the issues."

Other cases have held such evidence admissible under certain circumstances. In State v. Reed, 237 Mo. 224, 229, 140 S. W. 909, the prosecuting witness was permitted to testify that the defendant persuaded her to submit to him under a promise of marriage. This court held that the testimony was competent on the issue of previous chaste character, and said: "If the prosecutrix yielded because of a promise of marriage, as she testified, such [236] promise is so immediately connected with the question of her previously chaste character and with the act of the defendant which the law denounces, that it becomes a part of the transaction and is essential to a proper understanding of the facts which constitute the offense."

In State v. Oliver, 337 Mo. 1037, 87 S. W. (2d) 644, evidence that the prosecutrix submitted to defendant because of a prior engagement of the parties to be married, and evidence of subsequent declarations of defendant that he and the prosecutrix were going to get married, was held to have been properly admitted as circumstances bearing on the issue of the previous chaste character of the prosecutrix.

In State v. Kelley, 191 Mo. 680, 90 S. W. 834, subsequent letters of defendant tending strongly to corroborate an alleged promise of

marriage, and containing statements "in the nature of an admission of defendant's criminal conduct," were held to have been properly admitted.

In this case the evidence of the alleged promise of marriage, and the evidence in corroboration thereof, is directly connected up with appellant's concern about what action the prosecutrix was going to take with reference to his alleged criminal conduct on the particular occasion. The promise was made on the same evening of the alleged offense and before the parties had parted company. An inference of guilty knowledge on the part of appellant could be inferred from the evidence and also a desire to conceal and prevent disclosure of the offense. The general rule is that acts, conduct, and declarations of the accused occurring after the commission of an alleged offense which are relevant and tend to show a consciousness of guilt, or a desire or disposition to conceal the crime, are admissible in evidence. State v. Daly, 210 Mo. 664, 676, 109 S. W. 53; State v. Cade, 326 Mo. 1132, 34 S. W. (2d) 82, 84, 85; State v. Gruber, (Mo. Sup.), 285 S. W. 426; State v. Pollard, 174 Mo. 607, 74 S. W. 969.; State v. Stackhouse, 242 Mo. 444, 449, 146 S. W. 1151; 22 C. J. S. 953 et seq., Secs. 623 and 624. In Smith v. State, Court of Criminal Appeals of Texas, 106 S. W. 1161, 1163, it was held not error to permit the state to prove that after an alleged rape had been committed, defendant told the prosecutrix what she should do to prevent conception. Like evidence of flight, which does not expressly point to a defendant's guilt of a particular offense, or to the commission of a crime in a particular manner, the evidence objected to was admissible as a circumstance tending to show a consciousness of guilt and a desire to conceal the offense.

Harvey Chappell, a witness for appellant, testified that he had had sexual intercourse with prosecutrix at the home of Mr. and Mrs. Hobart Baxter in West Plains, Missouri, in September 1945; that the bed in his room was mussed and soiled; that Mr. and Mrs. Baxter had complained about the condition of the bed; and that he told them what had happened and who had been there. Thereafter, appellant offered Mr. and Mrs. Baxter as witnesses and offered to prove by them that, on the occasion in question, they found the bed mussed and soiled, and that Chappell immediately told them he had had sexual relations with prosecutrix upon the bed. The evidence was offered on the theory that it tended to corroborate the testimony of Chappell. It was excluded and appellant assigns error thereon. The evidence concerning what Chappell told the Baxters was hearsay and was properly excluded as such. The other evidence, concerning the bed being "messed up" only tended to corroborate witness Chappell on an immaterial issue in the case. It was properly excluded. It did not tend to show that Chappell had had sexual relations with the prosecutrix, nor did it tend to prove that the

prosecutrix had been present at the time and place so that Chappell could have had sexual relations with her as he testified. Winchell v. Gaskill, 354 Mo. 593, 601, 190 S. W. (2d) 266, 271. Compare, Adams v. Moberg, 356 Mo. 1175, 205 S. W. (2d) 553, 557.

Appellant contends that the court committed error and abused its discretion by an alleged refusal to permit appellant to cross-examine his witness Joe Bill Lair, after the witness had surprised appellant's counsel by refusing to testify to facts, which he had previously stated to said [237] counsel, and by "testifying favorably for the state and unfavorably for the defendant."

The record sufficiently supports appellant's contention that he called Joe Bill Lair as a witness and that the witness "expressly and impliedly denied what he had told defendant and his counsel a few moments before he was put on the stand," but the record does not support the contention that the court did not permit counsel to cross-examine the witness; nor does it support the contention that the witness testified "favorably to the state and unfavorably for the defendant." The witness testified that he had attended a party at the home of prosecutrix about October 1945. They played games and he took a walk down the road with prosecutrix and talked with her. They "were sent up the road in a party game" at night and were gone 15 or 20 minutes. The prosecutrix did not discuss sexual intercourse with him, nor ask if he had any contraceptive devises; nor did he know whether she offered to remove any of her clothing or not. The witness clearly failed to give the testimony expected of him and, with reference to prior conversations with counsel, he said: "I was talking then, I am swearing now." Counsel was permitted to cross-examine the witness and the witness stated that he was not telling the truth when he had talked to counsel, but was now testifying to the truth. The court refused to permit counsel to prove by the witness what the witness had told the attorney prior to the trial. This was not error. The evidence given by the witness at the trial was not of such an affirmative character as to be favorable to the adverse party, nor was it sufficient to make the witness, in effect, a witness for the state and to thereby authorize proof of previous inconsistent and contradictory statements.

" 'We held in the case of State v. Bowen, 263 Mo. [279]; loc. cit. 280, 172 S. W. 367, that it is not sufficient to warrant a party who puts a witness on the stand, in impeaching such witness (by showing extrajudicial statements contradictory of the testimony of the witness upon the stand), that the witness merely fails or refuses to tell the facts which he had theretofore related extrajudicially or fails to tell all such facts, but, in order to warrant impeachment in the mode stated, the witness must go further, and by relating wholly contradictory facts become in effect a witness for the adverse side. In that latter event the party calling the witness is entitled to show

that he was misled and entrapped by the witness' former words and attitude into calling the adverse witness. He is not so entitled; however, when the witness merely fails to relate facts which the party offering him had been led to believe he would relate.' State v. Drummins, 274 Mo. 632, 204 S. W. 271.'' State v. Hogan, 352 Mo. 379, 177 S. W. (2d) 465, 466; Crabtree v. Kurn, 351 Mo. 628, 173 S. W. (2d) 851, 858; Clancy v. St. Louis Transit Co., 192 Mo. 615, 649, 91 S. W. 509.

Appellant assigns error on the giving of Instruction No. 1 on behalf of the state. This instruction conditioned a conviction upon the finding of specified facts, including a finding that the act submitted occurred "on or about the — day of December 1945." Appellant contends the "instruction did not limit the time to the time testified to by the prosecuting witness and the jury could have and may have found the defendant guilty under his own testimony to the effect that he did have sexual relations with the prosecuting witness sometime before the time she testified to." Appellant says, "time was the essence of the offense charged," and that "this instruction should have in some way limited it (the date) to the time testified to by the prosecuting witness."

Appellant's theory is that he could not be convicted of the offense charged in the information, if the jury believed his own testimony that he had committed the offense charged, upon the same female, while she was of the same age (in years), and near the same church building, three weeks prior to the date fixed by the information and the testimony of the prosecutrix, because, if prosecutrix was of previous chaste character on or about November 15, 1945, he had robbed her of her virtue on that date, and she was not of previous chaste character when the same act was repeated in December 1945. It is [238] unnecessary to determine the correctness of appellant's position, however, see State v. Cox, (Mo. Sup.), 263 S. W. 215, 218 (5, 6); State v. Foster, supra, 225 S. W. 671, 672; State v. McMahon, 234 Mo. 611, 137 S. W. 872; State v. Henderson, 243 Mo. 503, 147 S. W. 480; 44 Am. Jur., Rape, Sec. 20, p. 914.

The state in submitting the cause did not seek a conviction of the appellant upon his own testimony, but based the submission on the testimony of the prosecutrix concerning the occurrence "on or about the — day of December 1945." The state further did not attempt to show that the location of the occurrence testified to by appellant (one mile from the church) was in Howell County. The date fixed by appellant's testimony was approximately three weeks prior to the date fixed by the prosecutrix. We think that Instruction No. 1 sufficiently limited the time of the alleged offense, for which appellant was convicted, to the facts testified to by prosecutrix. Under Instruction No. 1, the jury could not have found appellant guilty upon the basis of the act testified to by him, because said act was

said to have happened at a time prior to the beginning of the three weeks "protracted meeting" and, therefore, prior to the middle of November 1945, and no instruction permitted consideration of a date prior to on or about the — day of December 1945, or at any time within three years, as in State v. Taylor, 345 Mo. 325, 133 S. W. (2d) 336, 342 (9, 10), where peculiar facts made the instruction there considered erroneous.

Appellant further assigns error on the refusal of Instructions "A" and "B" offered by him.

Instruction "A" would have told the jury that even though they found defendant had had sexual intercourse with the prosecutrix "at the time mentioned in evidence," yet, before they could convict the defendant they must find from the evidence, beyond a reasonable doubt, that prosecutrix was at such time of previous chaste character. The instruction would further have told the jury that if they found that, "prior to the time of her alleged sexual intercourse with the defendant," she "had had sexual intercourse with the defendant, or any other person, then she was not of previous chaste character" and, if they so found the facts, they must acquit the defendant.

It is contended that this instruction "covered the only defense which the defendant had in the case," and the only contested issue, since "the defendant impliedly admitted all of the other facts incorporated in Instruction No. 1." Appellant says that it was a proper converse instruction; that Instruction 1 did not "so fairly and fully present his defense to the jury;" and that he was entitled to "a converse instruction presenting fairly and fully his viewpoint of the defense." Appellant relies on State v. Boyd, 354 Mo. 1172, 193 S. W. (2d) 596; State v. Fraley, 342 Mo. 422, 116 S. W. (2d) 17, and other cases, holding that "if a defendant offers a correct instruction as the converse of the state's main instruction, it should be given, unless fully and fairly covered by other instructions."

Instruction 1 required a finding, beyond a reasonable doubt, of all the essential facts necessary to be found to authorize a conviction in this case and told the jury, if the facts were so found, "you will find the defendant guilty as charged in the information and assess his punishment . . . and unless you so find you will acquit the defendant." In several paragraphs thereafter, but as a part of the instruction, the terms "feloniously," "carnal knowledge," and "previous chaste character" were defined.

We think the Instruction "A" was properly refused. It was not a proper converse instruction, because it might have been misleading and confusing to the jury in using the words, "prior to the time of her alleged sexual intercourse with the defendant, if you so find, the said Grace Fare had had sexual intercourse with the defendant, . . . ," and particularly so, since the instruction did not clearly distinguish the act of sexual intercourse testified to

by the prosecutrix from the act testified to by the appellant, nor did it make any reference to time or place to distinguish the two alleged acts "mentioned in evidence." The issue attempted to be submitted [239] by Instruction "A" was fairly covered by Instruction 1 which, before authorizing a finding of guilty, required a finding beyond a reasonable doubt that the said Grace Fare was (on the date submitted) of previously chaste character, and specifically defined "previous chaste character" as meaning that "the said Grace Fare had not previously, to the date of the alleged defense, had sexual intercourse with any male person." In any case, the court did not err in refusing to give Instruction "A" in the form offered.

Instruction "B" offered by appellant was as follows: "The Court instructs the jury that even though you may find and believe from the evidence that the prosecuting witness, Grace Fare, had a good reputation for chastity prior to and at the time she claims that the defendant had sexual intercourse with her, yet, *such fact,* if you find it to be a fact, *is not sufficient standing alone to prove that she was of previous chaste character at such time* because her reputation for chastity may have been good and still she may have been in fact unchaste at such time. And in this connection you are further instructed that you cannot presume that said Grace Fare was of previous chaste character at the time she claims the defendant had sexual intercourse with her, but it devolves upon the state to prove beyond a reasonable doubt that she was of previous chaste character at such time, and, unless the State has so proven to your satisfaction beyond a reasonable doubt, then you must acquit the defendant on this charge." (Italics ours.)

Appellant contends that Instruction "B" was a proper converse of Instructions 1 and 5 given on behalf of the state; and that it covered a phase of the case (the difference between reputation and character) that was not nearly so fully covered by other instructions. Appellant says that Instruction "B" stated his defense from his viewpoint; that the instruction was correct on both of the propositions stated therein; and that it was a clear, concise and correct statement of the law applicable to the facts in evidence. Appellant further argues that a jury of laymen may have taken the testimony concerning prosecutrix's good reputation for virtue prior to the occurrence "as conclusive of her good character for chastity"; and that he was entitled to have them told "specifically that they could not presume the previous chaste character of the prosecuting witness at the time she claims the defendant had sexual intercourse with her."

The instruction was properly refused. It was clearly argumentative and a comment upon the evidence concerning the prior good reputation of the prosecutrix for virtue and chastity. The testimony had been offered and received in evidence as bearing upon the issue of the previous chaste character of the prosecutrix. The instruction

undertook to comment upon and limit the effect of this evidence.

In State v. Cook, (Mo. Sup.), 207 S. W. 831, 832, 833 (questioned on another issue in State v. Parker, 301 Mo. 294, 256 S. W. 1040), the previous chaste character of the prosecutrix "was shown by her own testimony . . . and by evidence of divers neighbors and acquaintances that her reputation for chastity before the birth of the child was good." This court held that "reputation is some evidence of character," and that "it was not error to admit evidence of prosecutrix's general reputation for prior chastity as a circumstance tending to prove her previous chaste character." In State v. Taylor, 267 Mo. 41, 47, 183 S. W. 299, 301, the court held that "while it is true that reputation and character are not synonymous, yet the former is always some evidence from which the latter may be inferred, and is therefore admissible."

We have further examined the record proper. The information and the verdict are in proper form. The verdict is responsive to the issues in the case. Appellant was accorded allocution and was sentenced in accordance with the verdict. All errors assigned have been considered and ruled.

The judgment is affirmed. *Bradley* and *Van Osdol, CC.,* concur.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court. All the judges concur.