**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Timothy Scott WILLIAMS,
Defendant-Appellant.**

**No. 11413.**

Missouri Court of Appeals,
Southern District,
Division One.

April 28, 1980.

Motion for Rehearing Overruled and Motion for Transfer Denied May 21, 1980.

Application to Transfer Denied
July 15, 1980.

John D. Ashcroft, Atty. Gen., Paul Robert Otto, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Loren R. Honecker, Springfield, for defendant-appellant.

PREWITT, Judge.

A jury found defendant guilty of first degree robbery and he was sentenced to five years imprisonment. He contends that the evidence was not sufficient to support a conviction as he "was not properly proven to be the perpetrator of the offense charged".

■ In determining if the evidence is sufficient to support the charge, the evidence and all reasonable inferences must be considered in the light most favorable to the state and all evidence and inferences to the contrary disregarded. *State v. McGee*, 592 S.W.2d 886, 887 (Mo.App.1980); *State v. Buffington*, 588 S.W.2d 512, 514 (Mo.App. 1979).

On September 24, 1978, shortly before 11 o'clock p. m., two white males entered Andy's Market on West Sunshine Street in Springfield, Missouri. One man was wearing a nylon stocking over his face and a stocking cap. He carried a handgun. The other was wearing a ski mask. Both wore blue jeans. One employee was present in the market, a cashier named Virginia. The man with the gun ordered her to lie on the floor behind the counter and the other man jumped over the counter and tried to open the cash register. When the cash register would not open, the man with the gun ordered Virginia to get up, open the register, and lie down; which she did. While the robbery was occurring a customer entered the store, and the man with the gun ordered him to also lie on the floor. This customer later picked defendant's picture from a group of six photographs as "it looked like the guy" with the gun.

After taking approximately $150, the robbers left the market, and as they were running west, the one wearing the hosiery lost his cap. A stocking cap was found approximately 15 feet west of the market "similar" to the cap worn by the man with the gun. A ski mask "similar" to the one worn by the other robber was found the next day about a block west of the market. The cashier knew defendant as he had been in the store previously and lived close to her; but she couldn't tell if he was one of the robbers. She testified she was very frightened and was afraid she might be harmed. She only looked at the robbers two to three seconds.

A witness testified that he saw defendant that evening between 7 and 8 p. m. at a trailer park about one-half mile from the market. The witness said defendant was with another man and he "heard the word robbery mentioned, going to rob or something like that". Defendant and his companion were wearing blue jeans. Another witness, present at that time, testified that defendant and another came to her trailer between 7 and 7:30 p. m. the evening of the robbery and defendant "said something about robbing someplace". Defendant's companion was wearing a ski mask like that found a block west of the robbery but it was rolled up and you "couldn't see the eyes or the nose". The witness saw the handle of a "pistol or handgun" stuck into defendant's pants. Her trailer was approximately 10 minutes walking distance from Andy's Market. The same witness testified that she saw defendant two or three days after the robbery at Andy's Market. When asked at trial, "Did you have any conversation with the defendant concerning the incident at Andy's Market?" she replied, "I don't remember the exact conversation, but he was more or less boasting that they had gone in there and scared Virginia and taken the money." The witness stated that just prior to defendant's preliminary hearing, defendant "asked me if I would lie to his lawyer and tell him that he had nothing to do with it".

■ We believe that the evidence was sufficient for the jury to have found defendant guilty beyond a reasonable doubt. Part of the state's case was circumstantial and part established by direct evidence.

The admissions by defendant that "they had gone in there and scared Virginia and taken the money" constituted direct evidence of defendant's guilt. Admissions against interest are direct evidence of guilt. *State v. Holman*, 556 S.W.2d 499, 508 (Mo. App.1977). There was no question but that a robbery had been committed and the circumstances indicated defendant could have been one of the robbers. If the jurors believed the testimony regarding the admission, they could have found that defendant admitted the robbery. Once evidence other than the defendant's admission shows that the crime was committed by someone, then the defendant's admission is admissible and if believed, completes the case. *State v. Miller*, 593 S.W.2d 895, 898 (Mo.App.1980). Admission to a proven robbery needs no corroboration of identity to be admissible and sustain a conviction. Id.

■ There was also circumstantial evidence of defendant's guilt. While the circumstances shown must be such as are inconsistent with defendant's innocence, it is not necessary that they be absolutely conclusive of guilt and the evidence need not demonstrate an absolute impossibility of innocence. *State v. Buffington*, supra, 588 S.W.2d at 514. There was evidence that earlier that evening defendant and his companion were dressed in the manner of the robbers and had indicated they were "going to rob". His companion was wearing a ski mask like the one worn by one of the participants in the robbery and the one found a block west of the market. Defendant had a handgun at that time. His photograph "looked like the guy" that had the gun. Defendant's brief contends that identifying defendant's photograph did not constitute "substantial evidence" that defendant was one of the perpetrators because "the photograph was not shown to be a fair and accurate representation of appellant". No such showing was made but there was no objection at the trial because of that or on any other basis now claimed to affect this testimony and we believe that the customer's identification of defendant's photograph was one of the factors that the jury could consider.

■ There was evidence that defendant asked a witness to "lie to his lawyer and tell him that he had nothing to do with it". This evidence tends to show a consciousness of guilt. Acts, conduct and declarations of an accused occurring after commission of an alleged offense which tend to show a consciousness of guilt are admissible. *State v. Walker*, 357 Mo. 394, 208 S.W.2d 233, 236 (1948); *State v. Berry*, 526 S.W.2d 92, 101 (Mo.App.1975).

■ Whether or not the state's witnesses were credible was for the jury. It is not the function of this court to determine the credibility of the witnesses or to weigh the evidence. *State v. Berry*, supra, 526 S.W.2d at 95. The evidence was sufficient for the jury to find that defendant was one of the men who robbed the market.

The judgment is affirmed.

All concur.