## THE STATE v. DAVID M. SEAY, Appellant.

Division Two, June 4, 1920.

1. **DIFFERENT OFFENSES: Election.** The right to compel the State to elect upon which particular offense, among the several stated by the prosecuting attorney in his opening statement to have been committed by defendant, the state will expect a conviction, is largely within the discretion of the trial court; but the election should be made as soon as the facts are sufficiently developed to warrant it. So where the prosecuting attorney in his opening statement related substantially what the evidence would be in reference to different acts of carnal knowledge committed by defendant on the thirteen-year-old girl between June and December, the court did not commit prejudicial error by overruling defendant's motion, made on the close of the statement, to require the State to elect upon which of the particular distinct offenses it would expect a conviction; but a compelled election made at the close of the State's case, whereupon the State elected to demand a conviction for the offense committed in December, was made within proper time.

2. **REPUTATION: Cross-Examination: Assumption of Facts.** Where defendant's character witnesses were offered for the purpose of showing his reputation before the alleged crime of carnal knowledge with a thirteen-year-old girl was committed, it is error to permit the prosecuting attorney to ask them, if defendant was

charged at that time with the crime of rape upon a nine-year-old girl, or if they had heard that he was charged with committing rape on a girl eight years of age, or if they had heard prior to the offense charged that defendant was charged by eight or nine little girls with having sexual intercourse with them, would they say his reputation was good. The questions assumed that the prosecuting attorney possessed knowledge that defendant had committed other distinct abominable crimes, and was in effect a statement that he believed defendant to be guilty, not only of all of them, but of the crime of which he was being tried, and it is never proper for the prosecuting attorney to state to the jury his belief that the defendant is guilty, or to tell them he had committed other crimes.

3. **CARNAL KNOWLEDGE: Attitude of Court.** The crime of statutory rape upon a girl under fifteen years of age is so abhorrent that conviction is easy and the prejudice against a defendant in such a case is so strong that the court must take every precaution to see that he obtains an impartial trial.

Appeal from Jackson Criminal Court.—*Hon. Ralph S. Latshaw*, Judge.

REVERSED AND REMANDED.

*J. M. Johnson* and *Henry L. Warren* for appellant.

(1) The court erred in not sustaining the defendant's demurrer offered at the close of the State's case. State v. Tevis, 234 Mo. 276; State v. Goodale, 210 Mo. 275; State v. Hughes, 167 S. W. 527. (2) The court erred in not sustaining the defendant's motion filed at the opening of the case, to require the State to elect on which act it would stand. State v. Palmberg, 199 Mo. 233. (3) The court erred in admitting testimony of the subsequent acts of intercourse. State v. Palmberg, 199 Mo. 233. (4) The court erred in permitting questions to be asked and testimony given which assumed defendant had raped many other young girls. State v. Davis, 190 S. W. 298; State v. Wilson, 117 Mo. 570.

*Frank W. McAllister*, Attorney-General, and *J. W. Broaddus*, Assistant Attorney-General, for respondent.

(1)   The court did not err in refusing to sustain defendant's demurrer at the close of the State's case and at the close of all the evidence.  (a) Defendant having offered testimony in his own behalf waived his demurrer at the close of the State's case. State v. Mann, 217 S. W. 69.  (b)   Where there is any substantial evidence to sustain the verdict, this court will not interfere, as the weight of the evidence is for the jury. State v. Underwood, 263 Mo. 685;   State v. Concelia, 250 Mo. 412;   State v. Reed, 237 Mo. 231;   State v. Conley, 217 S. W. 29.  (c) There was substantial evidence tending to show defendant's guilt. State v. Manual, 263 Mo. 670;   State v. Swain, 239 Mo. 723.  (2)   The court did not err in refusing to sustain defendant's motion offered at the close of the opening statement to require the State to elect on what act it would stand, as the time of election rests largely in the discretion of the trial court.   State v. Hughes, 258 Mo. 270;   State v. McKinney, 254 Mo. 698;   State v. Miller, 263 Mo. 334; State v. Hurley, 242 Mo. 459;   State v. Pruitt, 202 Mo. 51.  (3)   As it was within the trial court's discretion to refuse to compel the State to elect on which act it would stand until the close of its case, the admission of the act as testified to by the witness, Virginia Turner, before said election was not error.   State v. Hurley, 242 Mo. 459.  (4)   It is proper for the State to ask defendant's character witnesses on cross-examination if they had not heard of defendant committing similar assaults upon other girls. State v. Smith, 250 Mo. 277;   State v. Hutchinson, 186 S. W. 1001;   State v. Beckner, 194 Mo. 298;   State v. Wertz, 191 Mo. 579;   State v. Parker, 172 Mo. 206;   Underhill on Criminal Evidence, sec. 82.

WHITE, C.—The defendant appeals from a conviction in the Circuit Court of Jackson County, on a charge of statutory rape, committed upon one Lucy Hare, a female child under the age of fifteen years.

Seay was fifty-nine years of age, a bachelor, and conducted a card-printing shop at No. 1120 Troost Ave-

State v. Seay.

nue, Kansas City. The shop was on the ground floor and contained two rooms—one in front where he transacted business, and one in the rear where he slept, and where, the State's evidence went to show, he maintained a cot on which the alleged offense was committed.

Lucy Hare was thirteen years of age and attended the Humboldt School. She, with other girls who attended that school, were frequenters of the defendant's shop. She was in the shop a number of times during a period extending from June, 1918, until December of that year. It was on one of these visits in June that the first criminal act was committed by the defendant against Lucy Hare. This recurred at intervals when she would visit the shop in company with another girl, named Virginia Turner. The last act of the kind described occurred about a week before Christmas in December, 1918. The incident is described by the prosecuting witness and by Virginia Turner who was present all the time.

The defendants endeavored to show that the arrangement of the shop was such that he could not have committed the offense in the manner detailed, by describing the interior of the back room of his shop. This evidence, however, was contradicted by the testimony of the State's witnesses who described the place as containing two bunks, one about seven feet above the floor, where he slept, and the other lower down, composed of boxes over which a quilt or something was spread.

I. The attorney for the defendant demurred to the evidence at the close of the State's evidence, and again at the close of all the evidence. It is claimed that the court erred in overruling these demurrers. In regard to the facts relating to the particular offense for which the State seeks a conviction the evidence **Demurrer to Evidence.** of the prosecuting witness and of Virginia Turner was quite clear and entirely sufficient to submit the issue to the jury. The defendant, on cross-examination of the prosecuting witness, had her state that she suffered no pain at the time. This was

offset by the testimony of a physician, who examined the girl on the order of the court, and testified that she was a well developed girl for her age of thirteen years and that the hymen was broken at a much earlier period, not recently. The court properly overruled the demurrer to the evidence.

II. The prosecuting attorney, in his opening statement, related substantially what the evidence would be in relation to the different criminal acts committed by the defendant upon the prosecuting witness and the defendant's counsel then asked the court to have the State elect upon which particular offense the State would expect a conviction, since each distinct act was a separate crime. The court overruled the motion, but at the close of the State's case did require the State to elect. The prosecutor thereupon elected to demand a conviction for the offense committed about a week before Christmas in December, 1918. The rule in regard to requiring an election in such case is largely within the discretion of the trial court. It should be made as soon as the facts are sufficiently developed to warrant it. [State v. Hughes, 258 Mo. 264, l. c. 270; State v. Hurley, 242 Mo. l. c. 459; State v. Miller, 263 Mo. l. c. 334.] The election in this case was made within the proper time.

*Election.*

III. The defendant denied specifically and generally all the criminal acts charged against him and introduced a number of witnesses, who from the evidence appeared to be reputable citizens, to testify that he had a good reputation. It appears from intimations in the record that some time in February, 1919, the defendant was apprehended, and was then suspected of committing sundry crimes of the character charged against him in this case, against numerous girls, including the prosecuting witness. When the defendant's character witnesses were on the stand testifying to his good character the prosecuting attorney proceeded to cross-examine them in this manner:

"Q. (By Mr. Curtin): If you had heard that this defendant was charged with the crime of rape upon a nine-year-old girl by the name of Mildred Roberts would you then say his reputation was good?"

Objection to this question was overruled and exception saved.

"The Court: Answer the question, doctor.

"Read the question.

"(Last question asked by Mr. Curtin read to witness by the reporter).

"A. It is very difficult to answer that question. If it charged that? I would say that the charge is very bad for him.

"Q. (By Mr. Curtin): Very bad for him? A. Yes, sir."

The prosecutor then asked this question:

"Q. (By Mr. Curtin): If you had heard that this defendant was charged with committing rape on a girl eight years of age by the name of *Alice Parrish*, would you say that his reputation was good?"

Objection to this was overruled and the witness answered:

"A. I would say it is a very unfortunate charge."

A number of questions of that character were asked of several witnesses and answered over the objection and exception of the defendant, and of one witness the prosecutor asked this question:

"Q. Now, Mr. Fratcher, had you heard prior to the 27th day of February, 1919, this man was charged *by eight or nine little girls* of having had sexual intercourse with them, would you still say that his reputation for morality was good?"

Objection to which was overruled and exception saved.

When a defendant on trial charged with a crime introduces a witness to prove good character it is proper for the State to cross-examine such character witnesses for the purpose of testing their knowledge of the defendant's reputation, the sources of their information, and their credibility. Such cross-examination is largely

within the discretion of the trial court. [State v. Phillips, 233 Mo. l. c. 305; State v. Harris, 209 Mo. l. c. 443.] It is permissible to inquire of the character witnesses whether they have heard such and such rumors relating to the defendant; rumors of crimes or other acts which would reflect upon his character in order to determine upon what the witness bases his judgment as to the reputation of the defendant. [State v. Brown, 181 Mo. l. c. 213-14.] Such questions are improper unless such rumors are afloat to affect defendant's reputation. [State v. Parker, 172 Mo. 191, l. c. 207.] The opinion in the Parker case quotes from Greenleaf, as follows: "In testing a witness who speaks to good character, it would expose the untrustworthiness of his testimony if he admits that rumors of misconduct are known to him; for the knowledge of such rumors may well be inconsistent with his assertion that the person's reputation is good." [State v. Smith, 250 Mo. l. c. 277; State v. McLaughlin, 149 Mo. l. c. 33.] A leading and well considered case upon this subject is State v. Crow, 107 Mo. 341, l. c. 346-348.

Rumors affecting one's reputation is quite a different thing from proof of specific acts or crimes for which the defendant might be convicted. In this case the character witnesses were offered for the purpose of showing the defendant's reputation before he was charged with the crime for which he was on trial. The questions asked by the prosecuting attorney did not go to contradict any statement as to what his reputation was then. He didn't ask the witness if rumors were current, which they had heard concerning defendant's misconduct, because it appears there were no such rumors at the time. The questions were entirely argumentative, and called for opinions and conclusions. The witnesses could not have heard of the offenses named at the time to which the inquiry is directed and the prosecutor knew it. Under the pretext of testing the credibility and information of the witnesses he sought to bring before the jury the facts that the defendant had committed a

number of very serious and abominable crimes, for any one of which he could be convicted; crimes totally disconnected with the crime for which he was on trial. The question not only avoided any reference to the defendant's reputation as it was, but demanded an opinion of the witnesses on their assumed *knowledge* of *facts* instead of reported crimes. This sort of cross-examination has been universally condemned. The prosecutor overstepped his privilege. [State v. Teeter, 239 Mo. 475, l. c. 485; State v. Wellman, 253 Mo. l. c. 315; State v. Phillips, 233 Mo. l. c. 305.] It is not proper for the prosecuting attorney to state to the jury his belief in the guilt of the defendant, for the reason that the jury may conclude that his belief was acquired through information not in the evidence. [State v. Hess, 240 Mo. l. c. 159; State v. Webb, 254 Mo. l. c. 435; State v. Reppley, 213 S. W. l. c. 480.] It is equally improper for him to tell the jury that the defendant has committed other crimes; and that he was allowed to do in asking the questions set out above.

A crime of the character of the one with which defendant is charged is so abhorrent that conviction is easy; in fact, the charge is almost equivalent to a conviction. So strong is the prejudice against a defendant in such case that the court must take every precaution to see that he obtains an impartial trial.

For the error committed by the trial court in allowing the cross-examination of defendant's character witnesses the judgment is reversed and the cause remanded.

*Railey* and *Mozley, CC.,* concur.

PER CURIAM:—The foregoing opinion by WHITE, C., is adopted as the opinion of the court. All of the judges concur.