THE STATE v. GEORGE TAYLOR, Appellant.—133 S. W. (2d) 336.

Division Two, November 22, 1939.

*Mayer, Conkling & Sprague* for appellant.

*Roy McKittrick,* Attorney General, and *Lawrence L. Bradley,* Assistant Attorney General, for respondent.

COOLEY, C.—Defendant, George Taylor, was convicted in the Circuit Court of Buchanan County of having attempted to corrupt a "summoned" juror, was sentenced to pay a fine of $500 and has appealed. The offense charged and of which defendant was convicted is a felony, hence our appellate jurisdiction. The information charges violation of Section 3888, Revised Statutes 1929 (Mo. Stat. Ann., p. 2744), which makes it a crime to corrupt or attempt to corrupt any person "summoned or sworn" as a juror. The information charges that on or about January 17, 1938, the defendant attempted to corrupt one Henry Delmar Chaney who had theretofore been duly summoned as a juror. The sufficiency of the information is not challenged and it need not be quoted. The facts may be outlined thus:—

At the times herein involved there was pending in the Circuit Court of Buchanan County, a case (among others) entitled State of Missouri v. William F. Walpole, which it appears had been scheduled for trial for January 17, 1938. [Note. Dates and time are important and should be kept in mind.] On January 10, 1938, a summons was issued for some sixty-five to seventy-five men to serve as jurors for the week beginning January 17th. Chaney was one of the men so summoned for jury service for that week,—(not specifically for the Walpole case). Some time between January 10th and 13th Chaney was excused by the judge of the court. [We shall speak of this more in detail hereafter.] On January 14th, according to Chaney's testimony, defendant, Taylor, met him at a store where Chaney worked and said to him, in substance, that he "noticed" that Chaney had been summoned as a juror and that if he (Chaney) got on the Walpole case and would work for an acquittal or hang the jury he (Taylor) "would see that I (Chaney) got a nice piece of change." Chaney

told Taylor he had been excused from jury service and there that conversation ended. But Chaney told his employer, Mr. Messenger, about that talk. Messenger conferred with the prosecuting attorney who, it seems, advised him to tell Chaney to report for jury duty on the 17th. Messenger testified that he also called up the presiding. judge of the division of the circuit court in which the Walpole case was pending and (by telephone) told him what had transpired; that the judge at first said he would "let him know" or communicate further with him and later (by telephone) told him to tell Chaney to report for jury service on the 17th. Messenger did tell Chaney, or advise him, to report for jury service on the 17th, but did not tell him,—nor did anyone—that the judge of the court had so directed. No order of court was made directing that Chaney appear on the 17th, nor was there any summons to him, other than that of January 10th above referred to. He went to the courtroom on the 17th only in response to *Messenger's* request, with no knowledge that the court or the judge had so directed or requested. But he did appear on the 17th, was called, questioned, with others, as to his qualifications to serve on the Walpole jury and, it seems, was accepted as one of the panel of twenty-four from which the trial jury of twelve (after allowable peremptory challenges should be made) was to be drawn. It does not appear that any question was raised by either party as to how Chaney came to be there or as to whether or not he had been duly summoned. He seems to have been simply accepted as one of the qualified panel of twenty-four from which the trial jury of twelve was to be selected. It appears Chaney was not one of the twelve trial jurors remaining after the parties had exercised their statutory right of peremptory challenges from the list of twenty-four who had qualified.

Coming now to the events of January 17th,—and again we note that *time* is important in the circumstances of this case, for reasons which will more fully appear hereinafter. The Walpole case was called for trial on said January 17th, but the court record proper does not show at what *time* in the day the case was called,—nor does the State's evidence show. Defendant introduced the evidence of the then official court reporter who testified that she could tell from her notes when the case was called for trial; that her notes showed there was some civil matter being heard by the court in the forenoon that day and that the impaneling of a jury for the Walpole case began at about 1:30 P. M. This is important because the only conversation between defendant and Chaney claimed to have occurred after January 14th is shown to have occurred—if at all,— at the noon recess of court on the 17th. Chaney testified that defendant met him on the 17th. That was Monday. The Walpole case was called for trial and the impaneling of a jury for that case was begun that day. Chaney could not recall whether he was called for exam-

ination as a prospective juror in the "morning or afternoon." The court record does not show. It is true that at one time in his examination Chaney said he thought the conversation was on *Tuesday*, but his testimony as a whole, including cross-examination, shows that it must have been at the noon recess on *Monday*, the 17th. There was but one conversation after the 14th. All the evidence shows this fact. All the other evidence on behalf of the State, as well as on behalf of defendant, shows that whatever conversation occurred between defendant and Chaney was during the noon recess of court on Monday, the 17th. Chaney testified that Taylor said to him "he saw where I had got on the jury and that he would be up to see me after it was over and we would fix things up." He *thought* that was after he had been questioned on *voir dire*. On the other hand the stenographer's notes show that the impaneling of the jury did not begin till about 1:30 P. M. on Monday,—and it may be observed that if it began on Monday it probably would have been completed before noon on Tuesday, though of this we cannot take judicial notice.

 Further, both Chaney and defendant had been watched by detectives employed by the State from January 14th to January 17th, and their testimony, part offered by the State and part by the defendant, tends to show that whatever conversation occurred between Chaney and defendant was at the noon recess of court on Monday, the 17th.

The parties differ as to what that conversation was. We have stated the State's version. On defendant's behalf the evidence was to the effect that they merely met and exchanged greetings, as—"How do you do,"—or "hello" or something of the sort,—and nothing more, —with no reference to the Walpole case or to any prior conversation relative thereto. This dispute of fact was concededly a question for the jury.

 The court gave, among others, Instruction No. 5, which is complained of on this appeal. For disposal of the complaint here made against it we may epitomize it by saying that it told the jury in substance and effect that if the jury found that on or about January 17, 1938, the Walpole case was pending; that on or about January 10, 1938, about seventy-five persons, of whom Chaney was one, were summoned for jury service "in said case" and appeared "in obedience to said summons;" and that defendant, knowing such facts, did "on or about the 17th day of January, 1938, *or at any time within three years next before the filing of the information in this cause*" feloniously, etc., attempt to corrupt said Chaney, they should find the defendant guilty. The information was filed May 2, 1938. (The italics in the above quotation are ours.) The complaints of this instruction seem to be that it authorized conviction for an attempt to corrupt on *January 14th*—"at any time within three years next before the filing of the information"—at a time when

Chaney had been excused and was not a "summoned"—or sworn—juror, and that even on the 17th Chaney was not a "summoned" juror, as charged in the information and as contemplated by the statute. Further facts as may be necessary will be stated in the course of our opinion.

We take first the question whether Chaney was a "summoned" juror on January 14th. He had been summoned on or about January 10th but it was conceded on the trial below that he had been excused by the judge of the trial court prior to the 14th, and he so informed defendant on that day when, he says, the latter tried to bribe him. In this connection respondent has, since the oral argument and submission of this appeal in this court, filed a motion asking leave to file an additional brief or suggestions to the effect that Chaney was never *legally* excused, to which the defendant has filed suggestions in opposition, contending that such course would be a complete "change of front" and an attempt to sustain the judgment on a theory diametrically opposed to the theory on which the case was tried below. Without going into detail as to the manner of Chaney's discharge or his being excused prior to January 14th it is sufficient to say that at the trial the State conceded he had been excused or discharged and that on said January 14th he was not a "summoned" juror. Upon the record before us there can be do doubt that such concession was made by the State. In his brief filed here the learned Assistant Attorney General, who briefed the case for the State (speaking of the difference between a temporary and a permanent discharge of a juror), with commendable frankness says: "It does not appear from the record . . . that Chaney's discharge was intended to be only temporary. At least under either theory of the law, Chaney was not a person under summons as a juror at the time appellant talked to him on January 14, 1938, he having been discharged and not yet recalled." With this frank admission—justified by the record before us—we are relieved of the necessity of detailing the evidence relative to the discharge or "excusing" of Chaney, prior to January 14th. The record is not entirely clear as to this matter, but had not the State conceded at the trial, as it did, that Chaney had been discharged or "excused" prior to January 14th the defendant might have produced more evidence on that point. With the fact conceded further evidence was unnecessary. In these circumstances it would not be fair to allow the State now—after trial below and even after submission of the case here—to take the contradictory position that Chaney had not been *legally* excused when the alleged conversation of January 14th occurred. The State's motion to file additional brief on this point should be overruled.

For authorities to the effect that a "summoned" juror who has been discharged or excused is no longer a "juror" see:—35 C. J., p.

309, sec. 313; 11 C. J. S., sec. 3, p. 853; Isaac (a slave) v. The State, 39 Tenn. (2 Head), 458; Neils Anderson v. The Wasatch & Jordan Valley Railroad Co., 2 Utah, 518; State v. Whitman, 14 S. C. Law Rep. 113 (cited as 48 S. C. L. 113).

We have then this situation. On January 14th Chaney was not a "summoned"—and of course not yet a "sworn"—juror. Whether or not he could be considered a "summoned" juror on the 17th when he says he again talked with defendant we shall consider later.

Taking first the date of the 14th. We have attempted to show that at that time Chaney was not a "summoned" juror, having been excused. Could defendant then be guilty for having attempted (if he did attempt) to corrupt Chaney as a summoned juror when Chaney was not a summoned juror. We think not. Chaney, on January 14th, was not a summoned or sworn juror, wherefore the offense denounced by the statute *could not* then be committed, because there was then no summoned or sworn juror to corrupt. Had defendant succeeded in "corrupting" Chaney—in obtaining his consent to vote for a verdict of acquittal in the Walpole case—we think it could hardly be said that defendant corrupted or attempted to corrupt a "summoned" or "sworn" juror, within the meaning of the statute, merely because, if so, defendant at the time *thought* Chaney was a summoned juror. If the thing defendant attempted to do would not and could not, under the statute, have been a crime if accomplished, how can it be said that he attempted to commit the denounced crime, however reprehensible may have been his intent from the standpoint of morals?

In 1 Bishop Criminal Law (7 Ed.), section 742, page 443, we read:

"We have seen, that, if what a man contemplates doing would not be in law a crime, he cannot be said, in point of law, to intend to commit the crime. If he thinks his act will be a crime, this is a mere mistake of his understanding, where the law holds it not to be such. His real intent being to do a particular thing, if the thing is not a crime he does not intend to commit one, whatever he may erroneously suppose."

In People v. Jaffe, 185 N. Y. 497, 78 N. E. 169, 9 L. R. A. (N. S.) 263, the defendant was prosecuted for receiving stolen goods, knowing them to have been stolen. The goods had been stolen but had been returned to the owner and were offered to the defendant by the agent of the true owner. The defendant believed that the goods were stolen property and in that belief bought them, but the facts (conceded at the trial) were that when offered to and received by the defendant the goods were in possession of and were negotiated to the defendant by the agent of the true owner and with the owner's knowledge and consent. The defendant was convicted of an attempt to commit the crime of receiving stolen property knowing it to have been stolen. The judgment was reversed. The court said that no matter what was the motive of the defendant or what he thought,

he could *do* nothing adapted to successful perpetration of the crime denounced by the statute because he could not know the property was stolen when in fact it was not stolen property, and that the *act* which he had in contemplation (the purchase of the goods) could not have been criminal, had the purchase been consummated, because the goods had not in fact been stolen but when offered to the defendant were in the custody of the true owner. The court further said, 9 L. R. A. (N. S.)—p. 266: "If all which an accused person intends to do would, if done, constitute no crime, it cannot be a crime to attempt to do with the same purpose a part of the thing intended. 1 Bishop, Crim. Law (7 Ed.), sec. 747;" and further [9 L. R. A. (N. S.) 267]:

"A particular belief cannot make that a crime which is not so in the absence of such belief. Take, for example, the case of a young man who attempts to vote, and succeeds in casting his vote under the belief that he is but twenty years of age, when he is in fact over twenty-one and a qualified voter. His intent to commit a crime, and his belief that he was committing a crime, would not make him guilty of any offense under these circumstances, although the moral turpitude of the transaction, on his part, would be just as great as it would if he were in fact under age. So, also, in the case of a prosecution under the statute of this State, which makes it rape in the second degree for a man to perpetrate an act of sexual intercourse with a female not his wife under the age of eighteen years. There could be no conviction if it was established upon the trial that the female was in fact over the age of eighteen years, although the defendant believed her to be younger and intended to commit the crime. No matter how reprehensible would be his act in morals, it would not be the act forbidden by this particular statute."

In State v. Butler, 178 Mo. 272, 77 S. W. 560, a somewhat analogous question was considered by this court. The defendant in that case was charged with having attempted to bribe a member of the Board of Health of St. Louis to vote for acceptance of a bid for disposal of garbage. There was no law or ordinance then in force imposing on said board member the duty of acting officially on said bid. The opinion is long and we shall not take space to epitomize it. So far as here pertinent the holding of the court is sufficiently reflected in paragraph 10 of the syllabus, reading: "There can be no bribery of an official to do a particular act, unless the law requires or imposes upon him the duty to act. The cannot be influenced to do something he has no power or authority to do." Many cases are cited tending to sustain that conclusion.

The State relies chiefly upon State v. Mitchell, 170 Mo. 633, 71 S. W. 175. In that case the defendant, Mitchell, was convicted of an attempt to murder one Warren. The information was drawn under what is now Section 4442, Revised Statutes 1929 (Mo. Stat. Ann., p.

3048), providing that "Every person who shall attempt to commit an offense prohibited by law, and in such attempt shall do any act toward the commission of such offense, but shall fail in the perpetration thereof, or shall be prevented or intercepted in executing the same," shall be punished as in that section provided. Mitchell, on a certain night, fired a revolver through the window of Warren's house into the room where he knew Warren customarily slept. He knew the arrangement of Warren's house, that Warren usually slept in a certain room, and the location of the bed therein, and one or more of the bullets hit the pillow where Warren's head would have been had he been sleeping there. Fortuitously Warren was not there but was sleeping in another room that night. It was shown that Mitchell meant to kill him.

We think the Mitchell case is distinguishable from the instant case. In the Mitchell case had Mitchell accomplished what he attempted it would have been a crime. His attempt may be likened somewhat to shooting at a person with intent to kill, but missing him. But, as graphically suggested in oral argument by appellant's counsel, suppose that when Mitchell fired those shots Warren—whether in that room or not—was *dead*—a corpse? Even though Mitchell did not know that fact—supposed Warren was alive and meant to kill him—yet he *could not* have killed him because he was already dead. You cannot murder a corpse. That illustration may seem a bit far-fetched but after all it is illustrative. In the instant case had defendant accomplished what it is claimed he attempted on January 14th, viz., the bribery of Chaney, it would not have been a crime under the statute because Chaney was not then a summoned or a sworn juror and could not be bribed as such. And it will hardly do to say that defendant may be convicted on the theory that he may have believed that Chaney might thereafter get on the Walpole jury though not at the time under summons. In 11 Corpus Juris., Secundum, section 3, page 853, we read:

"An offer of a bribe made to a person in contemplation of a mere probability that he may be elected or appointed to public office and called on to perform official functions does not constitute the crime of bribery."

It is suggested by the State that even though defendant could not be legally guilty for the alleged occurrence on January 14th, the conviction may be sustained as a violation of Section 4442, supra. We do not think so. The prosecution herein was clearly under Section 3888, supra, which makes it a crime to corrupt or *attempt to corrupt* a person "summoned or sworn as a juror." The charge is that defendant attempted to corrupt Chaney, a "summoned" juror. The statute is penal and criminal and such statutes are generally "construed strictly as to those portions which are against defendants, but liberally construed in those which are in their favor; that is, for

their ease and exemption. No person is to be made subject to such statutes by implication, and, when doubts arise concerning their interpretation, such doubts are to weigh only in favor of the accused.'' [State v. Butler, supra, 178 Mo. l. c. 320, 77 S. W. l. c. 572.] To allow this suggestion of the State would be, it seems to us, to sort of ''pyramid'' attempts—to convict defendant of *attempting to attempt* to corrupt the alleged juror—and this, too, when there was no such juror to corrupt. We do not think Section 4442, supra, has any application in this case.

Our conclusion on this branch of the case is that under the facts herein the defendant could not legally be convicted for the alleged occurrence of January 14th. It follows, in our opinion, that the State's Instruction No. 5 was prejudicially erroneous because it authorized conviction if the jury found that defendant attempted to corrupt Chaney, a summoned juror, not merely on January 17th, but at any time within three years prior to the filing of the information, which would include January 14th. The jury under that instruction may have convicted for the alleged occurrence of the 14th rather than that of the 17th,—and from the record we are inclined to think it not only possible but probable that they did do so. It is suggested that instructions similar in the respect now under consideration to said Instruction No. 5 have been approved by this court in cases where time was not of the essence of the offense. But the learned Assistant Attorney General concedes that where time *is* of the essence of the offense it is improper to give such instruction, and this we think is settled law and sound reason. In the instant case, for reasons above shown, the time element was important. The giving of that instruction was reversible error.

In view of the possibility of another trial we should make some further reference to the events of January 17th. We have pointed out that Chaney appeared in court on that day but only in response to a request or suggestion from his employer, Messenger, and with no information that the court or the judge of the court had directed or requested that he appear. Messenger, himself, of course had no authority to summon or direct Chaney—or anyone else—to report for jury service. If Chaney had disregarded Messenger's suggestion or request to report for service on the 17th could the court, in any way, have disciplined or punished him for non-compliance with an order which, as an *order of court* had not been made or for non-compliance with even a request or direction of the judge of the court which had not been communicated to him? Clearly not. So, then, when Chaney appeared in the courtroom on the 17th in response alone to Messenger's request he was not a summoned juror. But the evidence shows that at some time on that day he was called as a prospective juror, was examined as to his qualifications and was accepted as one of the panel of twenty-four men from which the trial

jury of twelve was to be drawn, and all this, so far as appears from the record, without any objection from either party that he had not been regularly summoned. It seems to us that from the time Chaney was thus called and examined as to his qualifications to serve, the parties knowing the purpose thereof and acquiescing therein, he should be regarded as a summoned juror within the meaning of the statute even though no formal summons had been issued to bring him into court. He then became subject to the control of the court as a member of the jury panel and from then on was so regarded by all. We think this interpretation of the statute accords with the common sense of the situation and does no violence to the rule requiring strict construction of criminal statutes. So then if the conversation on the 17th occurred after Chaney had been thus called and questioned we think he is to be regarded as then a summoned juror. For a case illustrative of such situation see State v. Williams, 136 Mo. 293, 38 S. W. 75. In that case the defendant, Williams, was convicted of having attempted to corrupt a juror, one Dickenson. The juror had been accepted as one of the panel of forty from which the trial jury of twelve was to be selected (as here the panel of twenty-four). The court said, 136 Mo. l. c. 307, 38 S. W. l. c. 78, "It was not necessary for the indictment to allege that the panel of jurors on which Dickenson was summoned, was summoned by order of the court, as the precedents heretofore cited show. The issuance of a *venire* has not been regarded as necessary in this State since Samuels v. State, 3 Mo. 68. And, ever since statutes regarding the summoning of a jury have been enacted, they have only been regarded as directory." (Citing cases.)

Perhaps we should observe further, in the possible event of another trial, that if the conversation on the 17th was as testified to by Chaney, the alleged conversation on the 14th would be admissible in evidence as tending to explain and elucidate the meaning of what was said on the 17th.

The judgment is reversed and the cause is remanded. *Westhues* and *Bohling, CC.*, concur.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. All the judges concur.